FILED: 10/26/2021 8:28 AM
Vermont Superior Court
Washington Unit
21-CV-03350

USDC - DVT
5:21-cv-273

STATE OF VERMONT

SUPERIOR COURT                                      CIVIL DIVISION
WASHINGTON UNIT                                     DOCKET NO. _____

|  |  |
|---|---|
| MICHAEL S. PIECIAK, in his official capacity as COMMISSIONER OF THE VERMONT DEPARTMENT OF FINANCIAL REGULATION, solely as LIQUIDATOR of GLOBAL HAWK INSURANCE COMPANY RISK RETENTION GROUP,<br><br>       Plaintiff,<br><br>  v.<br><br>CROWE LLP<br><br>       Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**COMPLAINT**

This is an action by plaintiff, the Commissioner of the Vermont Department of Financial Regulation, solely in his capacity as Liquidator of Global Hawk Insurance Company Risk Retention Group, to recover damages for breach of the duty of professional care by the defendant, Crowe LLP, in issuing audit opinions on financial statements that materially misstated the financial position of Global Hawk Insurance Company Risk Retention Group and did not disclose that it was insolvent.

**Parties**

1.      Plaintiff Michael S. Pieciak is the duly appointed Commissioner ("Commissioner") of the Vermont Department of Financial Regulation ("Department"), and in that capacity was appointed the Liquidator ("Liquidator") of Global Hawk Insurance Company

Risk Retention Group ("Global Hawk") pursuant to the Order of Liquidation entered June 8, 2020 by the Vermont Superior Court, Washington Unit ("Court") in Docket No. 196-5-20 Wncv. He brings this action solely in his capacity as Liquidator of Global Hawk. The Liquidator has a business address of Vermont Department of Financial Regulation, 89 Main Street, Montpelier, Vermont 05620.

2.      Pursuant to Paragraph 2 of the Order of Liquidation and 8 V.S.A. § 7057(a), the Liquidator is authorized to take possession of the assets of Global Hawk wherever located. Pursuant to Paragraph 3 of the Order of Liquidation and 8 V.S.A. § 7057(a), the Liquidator is vested by operation of law with the title to all the property, contracts and rights of action of Global Hawk.  Pursuant to Paragraph 5(a)(vii) and (xiii) of the Order of Liquidation and 8 V.S.A. § 7060, the Liquidator is authorized to institute actions to collect moneys due and claims belonging to Global Hawk and to pursue creditor's remedies to enforce his claims. Pursuant to Paragraph 5(a)(xiv) of the Liquidation Order and 8 V.S.A. § 7060, the Liquidator is authorized to prosecute any action on behalf of the creditors, members, policyholders or shareholders of Global Hawk against any officer of Global Hawk or any other person.

3.      Global Hawk is a nonstock mutual insurance company organized and existing under the laws of the State of Vermont with its statutory office and main administrative office at 26 Cornerstone Road, P.O. Box 137, Fairfax, Vermont 05454.  Global Hawk was originally formed as a risk retention group in South Carolina in 2003.  Global Hawk re-domesticated to Vermont in 2009.  As a Vermont-domiciled insurance company and risk retention group, Global Hawk is subject to regulation by the Department.  *See* 8 V.S.A. § 6050 *et seq.*  Global Hawk was declared to be insolvent and placed in liquidation by the Order of Liquidation entered by the

Court on June 8, 2020 in Docket No. 196-5-20 Wncv. At all relevant times prior to May 2020, Global Hawk had three independent directors.

4.      Crowe LLP, formerly known as Crowe Horwath LLP ("Crowe"), is an Indiana limited liability partnership with its headquarters in Chicago, Illinois. It is a public accounting, consulting and technology firm with offices around the world that, among other things, provides audit services to public and private entities. Crowe is licensed as an accounting firm by the Vermont Office of Professional Regulation, License Number 092.0000687. At all relevant times prior to May 2020, Crowe had offices at 175 Powder Forest Drive, Suite 301, Simsbury, Connecticut 06089 and 40 Main Street, Suite 300, Burlington, Vermont 05401.

### Jurisdiction and Venue

5.      The Court has jurisdiction over the defendant pursuant to 8 V.S.A. § 7032(c)(1) because the defendant is a person who acted on behalf of a Vermont domestic insurer against which a delinquency proceeding has been instituted and this action results from or is incident to its relationship with the insurer. The defendant acted as auditor for Global Hawk, now subject to a liquidation proceeding, and this action results from its role as auditor.

6.      Venue is proper in this Court pursuant to 8 V.S.A. § 7032(e).

### Factual Allegations

### Crowe's Auditor's Opinions and Letters of Qualification

7.      Global Hawk engaged Crowe to audit Global Hawk's financial statements for the year ending December 31, 2016 (the "2016 Audit") by an engagement letter dated August 23, 2016.

8.      Global Hawk engaged Crowe to audit Global Hawk's financial statements for the year ending December 31, 2017 (the "2017 Audit") by an engagement letter dated January 18, 2018.

9.      Global Hawk engaged Crowe to audit Global Hawk's financial statements for the year ending December 31, 2018 (the "2018 Audit") by an engagement letter dated December 12, 2018.

10.      Crowe issued an Independent Auditor's Report on Global Hawk's financial statements as of December 31, 2016 dated June 30, 2017 (the "2016 Auditor's Report").

11.      Crowe issued an Independent Auditor's Report on Global Hawk's financial statements as of December 31, 2017 dated June 29, 2018 (the "2017 Auditor's Report").

12.      Crowe issued an Independent Auditor's Report on Global Hawk's financial statements as of December 31, 2018 dated June 28, 2019 (the "2018 Auditor's Report").  The 2016 Auditor's Report, the 2017 Auditor's Report and the 2018 Auditor's Report are referred to herein as the "Auditor's Reports".

13.      The 2016, 2017 and 2018 Auditor's Reports each stated that: "We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our qualified audit opinion."

14.      The Auditor's Reports each qualified Crowe's audit opinion in a "Basis for Qualified Opinion" paragraph.  That paragraph noted that the treatment of surplus notes under accounting principles permitted by the Department ("statutory accounting") differs from the treatment under accounting principles generally accepted in the United States of America ("U.S. GAAP").  This qualification concerning the treatment of surplus notes has no bearing on the financial statements' report of capital contributions to or cash held by Global Hawk.

15.     In each of the Auditor's Reports, Crowe opined that – subject to the qualification concerning the treatment of surplus notes – the financial statements of Global Hawk attached to the Auditor's Report (the "Audited Financial Statements") present fairly, in all material respects, the financial position of Global Hawk.

16.     In the 2016 Auditor's Report, Crowe opined as follows:

In our opinion, except for the effects of the matters described in the Basis for Qualified Opinion paragraph, the financial statements referred to above present fairly, in all material respects, the financial position of Global Hawk Insurance Company Risk Retention Group as of December 31, 2016 and 2015, and the results of its operations and its cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America.

17.     In the 2017 Auditor's Report, Crowe opined as follows:

In our opinion, except for the effects of the matters described in the Basis for Qualified Opinion paragraph, the financial statements referred to above present fairly, in all material respects, the financial position of Global Hawk Insurance Company Risk Retention Group as of December 31, 2017 and 2016, and the results of its operations and its cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America.

18.     In the 2018 Auditor's Report, Crowe opined as follows:

In our opinion, except for the effects of the matters described in the Basis for Qualified Opinion paragraph, the financial statements referred to above present fairly, in all material respects, the financial position of Global Hawk Insurance Company Risk Retention Group as of December 31, 2018 and 2017, and the results of its operations and its cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America.

19.     Each of the 2016, 2017 and 2018 Auditor's Reports was accompanied by a Letter of Qualifications from Crowe to the Board of Directors of Global Hawk.  Each Letter of Qualifications stated that Crowe understood that Global Hawk intended to file the audited financial statements with the Vermont Department of Financial Regulation, that the Vermont Insurance Commissioner "will be relying on that information in monitoring and regulating the financial condition of the Company," that the engagement partner was licensed with CPA

5

mobility "allowing for the signing of our opinion in the State of Vermont," and that the letter was intended "for the information and use . . . of the Vermont Department of Financial Regulation."

20.     In the 2016 Letter of Qualifications dated June 30, 2017, Crowe stated:

We understand that the Company intends to file its audited financial statement and our report thereon with the Vermont Department of Financial Regulation and other state insurance departments in which the Company is licensed and that the Insurance Commissioner will be relying on that information in monitoring and regulating the financial condition of the Company.

* * *

[U]nder auditing standards generally accepted in the United States of America, we have the responsibility, within the inherent limitations of the auditing process, to plan and perform our audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether caused by error or fraud, and to exercise due professional care in the conduct of the audit.

21.     In the 2017 Letter of Qualifications dated June 29, 2018, Crowe stated:

We understand that the Company intends to file its audited financial statement and our report thereon with the Vermont Department of Financial Regulation and that the Insurance Commissioner will be relying on that information in monitoring and regulating the financial condition of the Company.

* * *

[U]nder auditing standards generally accepted in the United States of America, we have the responsibility, within the inherent limitations of the auditing process, to plan and perform our audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether caused by error or fraud, and to exercise due professional care in the conduct of the audit.

22.     In the 2018 Letter of Qualifications dated June 30, 2019, Crowe stated:

We understand that the Company intends to file its audited financial statement and our report thereon with the Vermont Department of Financial Regulation in which the Company is licensed and that the Insurance Commissioner will be relying on that information in monitoring and regulating the financial condition of the Company.

* * *

[U]nder auditing standards generally accepted in the United States of America, we have the responsibility, within the inherent limitations of the auditing process, to plan and

perform our audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether caused by error or fraud, and to exercise due professional care in the conduct of the audit.

<u>The Material Misstatements of Global Hawk's Financial Position</u>

23.     The Audited Financial Statements for 2016, 2017 and 2018 each materially misstated the financial position of Global Hawk by representing Global Hawk was solvent when in fact it was insolvent.  The Audited Financial Statements for 2016, 2017 and 2018 each materially misstated Global Hawk's assets by falsely reporting capital contributions as received, when the contributions had not been made.  In addition, the Audited Financial Statements for each year materially misstated Global Hawk's liabilities and assets by omitting loan liabilities and pledges of Global Hawk's assets.  The Audited Financial Statements for 2017 and 2018 also materially misstated Global Hawk's assets by overstating cash balances.

24.     The 2016 Audited Financial Statements reported increases in surplus due to capital contributions provided by Global Hawk's founding member (a corporation owned by the individual who was Global Hawk's President and Treasurer) during calendar year 2016 that totaled $13,100,000.  The 2016 Audited Financial Statements reported that capital contributions relating to $3,500,000 of this increase were received in 2016 and that "$9,600,000 . . . was recorded as capital contribution receivable on the balance sheet and was issued and collected after year end."  Bank records obtained by the Liquidator show that Global Hawk actually received only $3,000,660 of the reported capital contribution receivable, and the 2016 Audited Financial Statements overstated capital contributions by almost $6.6 million.

25.     The 2017 Audited Financial Statements reported increases in surplus due to capital contributions provided by Global Hawk's founding member during calendar year 2017 that totaled $8,500,000.  The 2017 Audited Financial Statements reported that proceeds relating

to $4,000,000 of this increase were received in 2017 and that "$4,500,000 . . . was recorded as capital contribution receivable on the balance sheet and was issued and collected after year end." Bank records obtained by the Liquidator show that Global Hawk actually received only $400 of the capital contributions reported as "received" and $450 of the capital contributions reported as "receivable," such that the 2017 Audited Financial Statements overstated capital contributions by almost $8.5 million.

26.     The 2018 Audited Financial-Statements reported increases in surplus due to capital contributions provided by Global Hawk's founding member during calendar year 2018 that totaled $5,000,000.  The 2018 Audited Financial Statements reported that capital contributions of $5,000,000 were received in 2018.  Bank records obtained by the Liquidator show that Global Hawk actually received only $500 of these contributions, and the 2018 Audited Financial Statements overstated capital contributions by almost $5 million.

27.     The 2016 Audited Financial Statements did not disclose any outstanding loan obligations or pledges of assets.  Records obtained by the Liquidator from Stifel show that, in 2016, Global Hawk Property and Casualty Insurance Company ("GHP&C") and Global Hawk obtained a Stifel Pledged Asset ("SPA") loan account, SPA Account No. ***1745, from Stifel Bank and Trust in 2016.  Global Hawk pledged its Stifel Nicolaus & Company ("Stifel") brokerage account ***-0101 assets as collateral for the SPA loan.  The original loan amount approved by Stifel Bank and Trust on August 23, 2016, was $6,400,000, which was increased to $14,000,000 on December 21, 2016.  The outstanding balance drawn on the SPA loan as of December 31, 2016 was $11,391,178.  The 2016 Audited Financial Statements did not disclose this liability, nor did they disclose that Global Hawk assets were pledged as collateral for it.

28.     The 2017 Audited Financial Statements do not disclose any outstanding loan obligations or pledges of assets.  Records obtained by the Liquidator from Stifel show that, in 2017, the SPA loan ***1745 was paid off with the proceeds of a new SPA loan, SPA Account No. ***7833, with Stifel Bank and Trust.  The collateral pledged for the new SPA loan account included Global Hawk's Stifel account ***-0101.  The outstanding SPA loan balance as of December 31, 2017 was $13,986,929.  The 2017 Audited Financial Statements did not disclose this liability, nor did they disclose that Global Hawk assets were pledged as collateral for it.

29.     The 2018 Audited Financial Statements do not disclose any outstanding loan obligations or pledges of assets.  Records obtained by the Liquidator from Stifel show that the outstanding loan balance on SPA loan ***7833 on December 31, 2018 was $14,322,407.  The 2018 Audited Financial Statements did not disclose this liability, nor did they disclose that Global Hawk assets were pledged as collateral for it.  The SPA loan ***7833 was ultimately repaid with Global Hawk funds.

30.     The 2017 Audited Financial Statements reported that Global Hawk had cash in the amount of $34,778,787 at December 31, 2017.  This included $28,009,782 in cash reported by Global Hawk's investment adviser Quantbridge Capital LLC ("Quantbridge") as held in Stifel accounts ***0101 and ***2396.  Account statements obtained by the Liquidator from Stifel show that Stifel actually held cash of $9,785,336 in the two Stifel accounts at December 31, 2017.  The 2017 Audited Financial Statements overstated cash by over $18 million.

31.     The 2018 Audited Financial Statements reported that Global Hawk had cash in the amount of $43,502,719 at December 31, 2018.  This included $44,920,066 reported by Quantbridge as held by Stifel in accounts ***0101 and ***2396.  Account statements obtained by the Liquidator from Stifel show that Stifel actually held cash of $11,097,369 in the two Stifel

accounts at December 31, 2018. The 2018 Audited Financial Statements overstated cash by over $33 million.

## Crowe's Breaches of Its Duty of Care

32.    As auditor for Global Hawk, Crowe had a duty to conduct its audit and issue its auditor's reports with due professional care. Crowe had a duty to identify and assess the risks of material misstatement, whether due to fraud or error, at the financial statement and relevant assertion levels. Crowe had a duty to obtain sufficient and appropriate audit evidence regarding the assessed risks of material misstatement by designing and implementing appropriate responses to those risks, including appropriate external confirmations. In using external confirmation procedures, Crowe had a duty to select an appropriate confirming party and to ask appropriate questions. Crowe then had a duty to evaluate confirmations received to assess their reliability and, where they were unreliable, to obtain additional confirmations.

33.    In its audits of Global Hawk for the years 2016, 2017 and 2018, Crowe breached its obligation to audit and issue its audit opinions with due professional care. Among other things, Crowe failed to confirm reported capital contributions with the banks that allegedly received the deposits and reported cash held by Stifel with Stifel itself. Although Crowe recognized that external confirmation of material assets was necessary, it did not confirm receipt of capital contributions with the banks that purportedly received the deposits, but instead accepted copies of bank statements or other documents provided by Global Hawk. It confirmed the cash and other asset amounts purportedly held by Stifel with Quantbridge, an investment advisor, instead of with Stifel, the custodian of the assets so identified by Quantbridge in its investment statement, and it failed to ask appropriate confirmation questions that would have identified undisclosed loans and pledges of assets.

10

34.     Global Hawk was designated a high priority company by the Department in early 2017.  In auditing and issuing its audit reports regarding Global Hawk for 2016, 2017 and 2018, Crowe was aware of the heightened level of regulatory concern over Global Hawk.

**A.     2016 Audit**

35.     Crowe was negligent in issuing its 2016 Audit Report.  It failed to properly request confirmation of the cash and invested assets held at Stifel.  It also failed to appropriately confirm receipt of $6,600,000 of capital contributions.

36.     Crowe was negligent in confirming cash and invested assets.  Crowe recognized the need to seek appropriate external confirmation of the cash and invested assets reported in the 2016 financial statements.  Crowe did not seek confirmation of these balances from Stifel but instead requested confirmation of the Stifel assets from Quantbridge.  Crowe's confirmation request was limited to asking for brokerage statements.  Crowe did not use the standard form financial institution confirmation request that asked about restrictions on balances and the existence of loans, even though Crowe used that form in seeking confirmation from Global Hawk's banks as part of the same audit.

37.     Crowe had a duty to select the appropriate confirming party for external confirmation.  It failed to do so.  Quantbridge was not the appropriate confirming party with respect to assets held by Stifel.   The custodian of the assets, not another third party, is the appropriate confirming party.  Crowe knew or reasonably should have known that Quantbridge was an investment adviser, not the custodian of the assets, and that Stifel was the custodian.

38.     Crowe had a duty to evaluate whether the results of the external confirmation request provided reliable audit evidence.  It failed to do so.  Among other things, the Quantbridge statement provided by Quantbridge in response to the confirmation request stated

that Quantbridge was not the custodian. The statement identified "QUANTBRIDGE CAPITAL

AS INVESTMENT ADVISOR." It included the following "Disclosures":

> Quantbridge Capital does not custody [*sic*] the assets. It is acting as investment
> manager to direct trades in the account as required in accordance with the
> risk/return profile of the client.
>
> Stifel Nicolaus is acting as Broker & Custodian of the assets. The team at Stifel
> Nicolaus, acting as broker is located in 375 Woodcliff Dr. #103, Fairport, NY
> 14450.

Further, Quantbridge provided a statement from Interactive Brokers, the custodian for a small

part of the assets managed by Quantbridge, but only provided a statement from Quantbridge

itself reporting the larger assets held by Stifel.

39. Crowe had a duty to properly determine the information to be confirmed. It failed

to do so. The confirmation request sought "a copy of our December 31, 2016 Brokerage

Account Statement." It did not ask about withdrawal restrictions or other accounts.

40. In seeking confirmation of cash account balances at various Global Hawk banks

during the audit, Crowe used the "Standard Form to Confirm Account Balance Information with

Financial Institutions." That form asked about withdrawal restrictions on the account and also

asked for information about any other deposit and loan accounts Global Hawk had at the

financial institution.

41. If Crowe had properly designed its confirmation request for Global Hawk's Stifel

account ***-0101 and sent it to the appropriate party, Stifel should have disclosed that Global

Hawk had a loan account ***1745 at Stifel, that the Global Hawk assets in account ***-0101

had been pledged as collateral for the loan, and that the outstanding balance on the loan was

$11,391,178 at December 31, 2016. This information would have required Crowe to perform

additional audit procedures and to revisit its assessment of management integrity and

implications for its overall audit plan.

42. The 2016 Audited Financial Statements reported total members' equity (surplus) of $4,221,762 at December 31, 2016. Inclusion of even part of the $11,391,178 undisclosed loan liability in or removing the pledged assets from Global Hawk's 2016 balance sheet would have demonstrated Global Hawk's insolvency.

43. Crowe was negligent in auditing reported capital contributions totaling $6,600,000. These contributions were reported as part of a capital contribution "collected" after year end in the 2016 Audited Financial Statements, when in fact those payments were not received. Crowe had a duty to obtain sufficient and appropriate audit evidence of the capital contributions. It failed to do so.

44. The 2016 balance sheet included in assets a capital contribution receivable of $9,600,000. As stated in note 6 of the 2016 Audited Financial Statements, "[a]s of December 31, 2016, $9,600,000 was recorded as a capital contribution receivable on the balance sheet and was issued and collected after year end." This reflected an increase in the amount of the surplus note requested by Global Hawk to offset the effect of Crowe's audit adjustment writing down a $6,000,000 reported deferred tax asset to $0.

45. Crowe knew that the capital contributions were necessary to maintain the required level of capital in Global Hawk. Crowe knew that the capital contributions were to be made by American Freight Forwarders & Transportation, Inc. ("AFF"), Global Hawk's founding member and a company controlled by a Director and Officer of Global Hawk (Jasbir Thandi). Crowe recognized the need to audit these capital contributions to see that they had in fact been made, but it failed to obtain sufficient and appropriate audit evidence that they had been collected as reported in the Audited Financial Statements.

46.     Crowe identified that the $9,600,000 capital contributions were supposedly collected in three payments:  $3,000,000 on March 1, 2017, $3,000,000 on May 26, 2017 and $3,600,000 on June 22, 2017.  The Crowe 2016 audit workpapers state that the auditors "traced the deposits of additional capital contributed subsequent to year end to the bank statements" and that "[i]n total, $9.6 million of capital was contributed subsequent to year end."  Crowe in fact did not obtain bank statements from Mechanics Bank for the two later alleged capital contributions.  Crowe's work papers include copies of a bank statement for the March 1, 2017 deposit.  They do not include bank statements covering the asserted $3,000,000 deposit on May 26, 2017 and $3,600,000 deposit on June 22, 2017.  Crowe tested the May 26 and June 22 contributions by obtaining and reviewing copies of the front side only of checks allegedly drawn on Mr. Thandi's personal Wells Fargo bank account and deposit slips for Global Hawk's Mechanics Bank account.  These documents were provided to Crowe by Global Hawk.

47.     If Crowe had obtained sufficient, appropriate audit evidence regarding the two capital contributions from the bank, it would have found that the alleged checks and deposit slips were fraudulent and that the contributions were not made.  The actual Mechanics Bank statements for May and June 2017 obtained by the Liquidator show a deposit of $300 (not $3,000,000) on May 26, 2017 and $360 (not $3,600,000) on June 22, 2017.  Removing the capital contributions from Global Hawk's balance sheet would have revealed that it was insolvent.

**B.      2017 Audit**

48.     Crowe was negligent in issuing its 2017 Audit Report.  Crowe recognized the need to seek external confirmation of the assets reported in the 2017 financial statements.  Crowe failed to properly obtain confirmation of cash and investment balances reportedly held at Stifel

from the appropriate party, Stifel. It also failed to properly inquire about undisclosed liabilities and restrictions on the assets, and failed to properly confirm reported capital contributions.

49.    Crowe was negligent in confirming cash and invested assets. Crowe recognized the need to seek appropriate external confirmation of the cash and invested assets reported in the 2017 financial statements. Crowe did not seek confirmation of these balances from Stifel but instead requested confirmation of the Stifel assets from Quantbridge. Crowe's confirmation request was limited to asking for brokerage statements. Crowe did not use the standard form confirmation request that asked about restrictions on balances and the existence of loans, even though Crowe used that form in seeking confirmation from Global Hawk's banks as part of the same audit.

50.    Crowe had a duty to select the appropriate confirming party for external confirmation. It failed to do so. Quantbridge was not the appropriate confirming party with respect to assets held by Stifel. The custodian of the assets, not another third party, is the appropriate confirming party. Crowe knew or reasonably should have known that Quantbridge was an investment adviser, not the custodian of the assets, and that Stifel was the custodian.

51.    Crowe had a duty to evaluate whether the results of the external confirmation request provided reliable audit evidence. It failed to do so. Crowe should have questioned the suitability of the Quantbridge statement as confirmation of cash and investment balances. Among other things, the Quantbridge statement provided by Quantbridge in response to the confirmation request stated that Quantbridge was not the custodian. Global Hawk's assets were concentrated at Stifel, and the amounts stated to be held by Stifel constituted the single largest asset of Global Hawk. Quantbridge provided a statement from Interactive Brokers, the custodian for a small part of the assets managed by Quantbridge, but only provided a statement from

Quantbridge itself reporting the much larger assets held by Stifel. The Quantbridge statement was received by fax from the 415 area code (San Francisco, Marin, and San Mateo counties), even though Quantbridge's office was located in New York.

52.    If Crowe had sought confirmation of the amounts from Stifel, it should have learned that the financial statements overstated Global Hawk's assets by $18,224,447 (putting aside a year end adjustment), such that Global Hawk was insolvent.

53.    Crowe had a duty to properly determine the information to be confirmed. It failed to do so. The confirmation request sought "a copy of our December 31, 2017 Brokerage Account Statement." It did not ask about withdrawal restrictions or other accounts. Crowe did not use the standard form confirmation request that asked about restrictions on balances and the existence of loans, even though Crowe used that standard form in seeking confirmation from banks as part of the same audit.

54.    If Crowe had asked the standard financial institution questions of the proper party, Stifel should have disclosed that in March 2017, Stifel SPA loan ***1745 was paid off and refinanced by a new SPA loan, ***7833; that the collateral pledged for SPA loan ***7833 included Global Hawk's Stifel account ***-0101; and that the December 31, 2017 balance for SPA loan ***7833 was $13,986,929. Bringing even part of this undisclosed liability or pledge of assets into Global Hawk's balance sheet would have resulted in Global Hawk reporting its insolvency.

55.    Crowe was negligent in auditing reported capital contributions. Crowe breached its duty of care by relying on copies of bank statements provided to it by Global Hawk to verify capital contributions made by AFF, an entity owned and operated by Global Hawk's President and Treasurer. During its audit, Crowe was aware of Global Hawk's significant losses and going

concern issues.  Crowe identified asserted capital contributions totaling $8,500,000, consisting of $1,000,000 deposited with Mechanics Bank on August 14, 2017, $3,000,000 on November 30, 2017, $2,000,000 on January 3, 2018, and $2,500,000 on February 28, 2018.

56.     The Crowe workpapers indicate that Crowe confirmed the purported contributions based on copies of Mechanics Bank statements that Crowe obtained from Global Hawk.  This was not sufficient appropriate audit evidence.  Copies of bank statements provided by Global Hawk are not sufficient or reliable confirmation of capital contributions reported by Global Hawk and reportedly made by an affiliated entity.

57.     If Crowe had sought confirmation of the capital contributions directly from Mechanics Bank, it would have learned that the Mechanics Bank statements provided by Global Hawk were false and materially misrepresented the capital contributions.  Based on statements obtained from Mechanics Bank by the Liquidator, the actual amounts deposited were $100 (not $1,000,000) on August 14, 2017, $300 (not $3,000,000) on November 30, 2017, $200 (not $2,000,000) on January 3, 2018, and $250 (not $2,500,000) on February 28, 2018.

58.     If the purported $8,500,000 in capital contributions was removed from Global Hawk's balance sheet, the financial statements would have shown Global Hawk was insolvent on December 31, 2017.

**C.     2018 Audit**

59.     Crowe was negligent in issuing its 2018 Audit Report.  In conducting the 2018 Audit, Crowe recognized the need to seek external confirmation of the cash and invested assets reported in the 2018 financial statements.  However, Crowe requested confirmation of cash and investment balances from Quantbridge, not Stifel, did not ask appropriate confirmation requests,

and did not appropriately evaluate the statement provided by Quantbridge concerning Global Hawk's largest reported asset.

60.     Crowe was negligent in confirming cash and invested assets. Crowe recognized the need to seek appropriate external confirmation of the cash and invested assets reported in the 2018 financial statements. Crowe did not seek confirmation of these balances from Stifel but instead requested confirmation of the Stifel assets from Quantbridge. Crowe's confirmation request was limited to asking for brokerage statements. Crowe did not use the standard form confirmation request that asked about restrictions on balances and the existence of loans, even though Crowe used that form in seeking confirmation from Global Hawk's banks as part of the same audit.

61.     Crowe had a duty to select the appropriate confirming party for external confirmation. It failed to do so. Quantbridge was not the appropriate confirming party with respect to assets held by Stifel.   The custodian of the assets, not another third party, is the appropriate confirming party. Crowe knew or reasonably should have known that Quantbridge was an investment adviser, not the custodian of the assets, and that Stifel was the custodian.

62.     Crowe had a duty to evaluate whether the results of the external confirmation request provided reliable audit evidence. It failed to do so. Crowe should have questioned the suitability of the Quantbridge statement as confirmation of cash and investment balances. There were again "red flags" that should have caused Crowe to question the suitability of the Quantbridge statement as confirmation of cash and investment balances. Among other things, Global Hawk's assets were concentrated at Stifel; the asset confirmations received by Crowe from Global Hawk's investment advisers were not consistent (Quantbridge provided a statement from one custodian, Interactive Brokers, but only the Quantbridge statement for assets held by

Stifel); and the Quantbridge confirmation was received by fax from a number in the 916 area code (Sacramento and surrounding areas) when Quantbridge's office was in New York.

63. If Crowe had sought confirmation of the amounts from Stifel, it would have learned that the Quantbridge statements were false and overstated Global Hawk's assets by $33,822,697 and that Global Hawk's reported assets were overstated by $33,822,697 such that the company was insolvent.

64. Crowe's confirmation request was limited to asking for brokerage statements. Crowe did not use the standard form confirmation request that asked about restrictions on balances and the existence of loans, even though Crowe used that standard form in seeking confirmation from banks as part of the same audit.

65. If Crowe had asked the standard financial institution questions, Stifel should have disclosed the Stifel SPA loan account ***7833; that the collateral pledged for SPA loan ***7833 included Global Hawk's Stifel account ***-0101; and that the December 31, 2018 balance for SPA loan ***7833 was $14,322,407. Bringing the undisclosed liability and pledge of assets into Global Hawk's balance sheet would have resulted in Global Hawk reporting insolvency.

66. Crowe was negligent in auditing reported capital contributions. Crowe breached its duty of care in confirming capital contributions assertedly made by AFF, an entity owned and operated by Global Hawk's President and Treasurer. Crowe identified asserted capital contributions totaling $5,000,000 consisting of $2,500,000 deposited with Mechanics Bank on February 28, 2018 and $2,500,000 on May 15, 2018. Crowe's 2018 audit workpapers state that it traced the two transactions through bank statements, but the workpapers do not include copies of the bank statements. If Crowe confirmed the contributions based on Mechanics Bank statements, they were copies of statements provided by Global Hawk. Copies of bank statements

19

provided by Global Hawk are not sufficient or reliable confirmation of capital contributions reported by Global Hawk and reportedly made by an affiliated entity.  Crowe failed to obtain sufficient and appropriate audit evidence of the capital contributions.

67.     If Crowe had sought confirmation of the capital contributions directly from Mechanics Bank, it should have learned that the bank statements provided by Global Hawk were false and materially misrepresented the capital contributions.  As reflected in statements obtained from Mechanics Bank by the Liquidator, the actual amounts deposited were $250 (not $2,500,000) on February 28, 2018 and $250 (not $2,500,000) on May 15, 2018.

68.     If these false capital contributions had been identified, Global Hawk's balance sheet would have reflected statutory insolvency as Global Hawk's surplus would have been below the $1,000,000 minimum.  *See* 8 V.S.A. § 6004(a)(4).

## The Liquidator's Damages

69.     The independent members of Global Hawk's Board of Directors relied upon Global Hawk's audited financial statements in monitoring the financial condition of Global Hawk.  The Department relied on Global Hawk's audited financial statements in its monitoring and regulatory review of Global Hawk's financial condition.  If Crowe had not breached its duty of care, the material misstatements in Global Hawk's financial statements would have been identified and made known, and the Department would have been alerted to Global Hawk's insolvency.  The Department would have taken regulatory action that would have prevented Global Hawk from continuing to write new and renewal insurance policies.  Global Hawk would have avoided incurring operating losses as well as subsequent misappropriations.

70.     As set forth in its Letters of Qualification, Crowe understood that the Department would rely on the Auditor's Reports, including the Audited Financial Statements, in regulating Global Hawk.

71.     The Department relied upon the representations as to Global Hawk's assets and members' equity (net worth) in the 2016, 2017 and 2018 Audited Financial Statements in allowing Global Hawk to continue doing business.  If Crowe had alerted the independent members of Global Hawk's Board of Directors or the Department in 2017, 2018 or 2019 that Global Hawk was insolvent, the Department would have acted to stop Global Hawk from continuing in business.

72.     On May 15, 2020, shortly after the Department became aware that Global Hawk's assets were materially overstated, such that the company was insolvent, the Commissioner filed an *ex parte* Petition for Seizure Order with the Court.  The Court entered an order (the "Seizure Order") on May 20, 2020.  The Seizure Order enjoined the further transaction of business by Global Hawk without the prior written consent of the Commissioner or his designee.  The Commissioner subsequently filed an Assented-to Petition for Order of Liquidation for Global Hawk with the Court on June 5, 2020.  The Court issued the Order of Liquidation for Global Hawk on June 8, 2020.

73.     The 2016 Audited Financial Statements reported that Global Hawk was solvent. Considering the undisclosed liability, pledge of assets, and the uncollected capital contributions described above, Global Hawk was insolvent on December 31, 2016.

74.     The 2017 Audited Financial Statements reported that Global Hawk was solvent. Considering the undisclosed liability, pledge of assets, uncollected capital contribution, and

overstated cash as described above, Global Hawk was insolvent on December 31, 2017.  The insolvency was deeper than on December 31, 2016.

75.     The 2018 Audited Financial Statements reported that Global Hawk was solvent. Considering the undisclosed liability, pledge of assets, uncollected capital contribution, and overstated cash as described above, Global Hawk was insolvent on December 31, 2018.  The insolvency was deeper than on December 31, 2017.

76.     Global Hawk was insolvent by an even greater amount on December 31, 2019.

77.     By allowing Global Hawk to continue in business, the materially misstated Audited Financial Statements harmed Global Hawk by allowing it to incur operating losses and suffer misappropriations and allowing its insolvency to increase.  The deepened insolvency harmed Global Hawk.  It also harmed Global Hawk's policyholders and other creditors, who will receive smaller distributions on their claims in the liquidation.

## CLAIMS

### COUNT I – 2016 AUDIT REPORT– NEGLIGENCE

78.     The Liquidator incorporates by reference the allegations of paragraphs 1 - 77 above.

79.     As auditor for Global Hawk, Crowe had a duty to conduct its 2016 audit and issue its audit opinion with due professional care, including a duty to obtain sufficient relevant evidence to afford a reasonable basis for its conclusions.

80.     Crowe breached its duty of care in issuing its 2016 Audit Report opining that the Audited Financial Statements for the year 2016 fairly presented Global Hawk's financial position.  The 2016 Audited Financial Statements materially misstated Global Hawk's assets and did not fairly present Global Hawk's financial position.  Global Hawk was insolvent.

22

81.    The Department relied upon the representations as to Global Hawk's assets and members' equity (net worth) in the 2016 Audited Financial Statements in allowing Global Hawk to continue doing business.  If Crowe had alerted the Department in 2017 that Global Hawk was insolvent, the Department would have acted to stop Global Hawk from continuing in business.

82.    By allowing Global Hawk to continue in business, the materially misstated Audited Financial Statements damaged Global Hawk by allowing it to incur operating losses and suffer misappropriations and allowing its insolvency to increase.  The deepened insolvency damaged Global Hawk.  It also damaged Global Hawk's policyholders and other creditors, who will receive smaller distributions on their claims.

## COUNT II – 2017 AUDIT REPORT– NEGLIGENCE

83.    The Liquidator incorporates by reference the allegations of paragraphs 1 - 77 above.

84.    As auditor for Global Hawk, Crowe had a duty to conduct its 2017 audit and issue its audit opinion with due professional care, including a duty to obtain sufficient relevant evidence to afford a reasonable basis for its conclusions.

85.    Crowe breached its duty of care in issuing its audit opinion that the Audited Financial Statements for the year 2017 fairly presented Global Hawk's financial position.  The 2017 Audited Financial Statements materially misstated Global Hawk's assets and did not fairly present Global Hawk's financial position.  Global Hawk was insolvent.

86.    The Department relied upon the representations as to Global Hawk's assets and members' equity (net worth) in the 2017 Audited Financial Statements in allowing Global Hawk to continue doing business.  If Crowe had alerted the Department in 2018 that Global Hawk was insolvent, the Department would have acted to stop Global Hawk from continuing in business.

87.     By allowing Global Hawk to continue in business, the materially misstated Audited Financial Statements damaged Global Hawk by allowing it to incur operating losses and suffer misappropriations and allowing its insolvency to increase.  The deepened insolvency damaged Global Hawk.  It also damaged Global Hawk's policyholders and other creditors, who will receive smaller distributions on their claims.

### COUNT III – 2018 AUDIT REPORT – NEGLIGENCE

88.     The Liquidator incorporates by reference the allegations of paragraphs 1 - 77 above.

89.     As auditor for Global Hawk, Crowe had a duty to conduct its 2018 audit and issue its audit opinion with due professional care, including a duty to obtain sufficient relevant evidence to afford a reasonable basis for its conclusions.

90.     Crowe breached its duty of care in issuing its audit opinion that the Audited Financial Statements for the year 2018 fairly presented Global Hawk's financial position.  The 2018 Audited Financial Statements materially misstated Global Hawk's assets and did not fairly present Global Hawk's financial position.  Global Hawk was insolvent.

91.     The Department relied upon the representations as to Global Hawk's assets and members' equity (net worth) in the 2018 Audited Financial Statements in allowing Global Hawk to continue doing business.  If Crowe had alerted the Department in 2019 that Global Hawk was insolvent, the Department would have acted to stop Global Hawk from continuing in business.

92.     By allowing Global Hawk to continue in business, the materially misstated Audited Financial Statements damaged Global Hawk by allowing it to incur operating losses and suffer misappropriations and allowing its insolvency to increase.  The deepened insolvency

damaged Global Hawk.  It also damaged Global Hawk's policyholders and other creditors, who will receive smaller distributions on their claims.

### COUNT IV – 2016 AUDIT REPORT– NEGLIGENT MISREPRESENTATION

93.     The Liquidator incorporates by reference the allegations of paragraphs 1 - 77 above.

94.     As auditor for Global Hawk, Crowe had a duty to conduct its 2016 audit and issue its audit opinion with due professional care, including a duty to obtain sufficient relevant evidence to afford a reasonable basis for its conclusions.

95.     Crowe breached its duty of care in issuing its 2016 Audit Report opining that the Audited Financial Statements for the year 2016 fairly presented Global Hawk's financial position.  The 2016 Audited Financial Statements materially misstated Global Hawk's assets and did not fairly present Global Hawk's financial position.  Global Hawk was insolvent.

96.     Crowe knew that the Department would rely on representations made in the 2016 Auditor's Report.

97.     In issuing its 2016 Audit Report, Crowe negligently supplied false information for the guidance of others.

98.     The Department reasonably relied upon the representations as to Global Hawk's assets and members' equity (net worth) in the 2016 Audited Financial Statements in allowing Global Hawk to continue doing business.  If Crowe had alerted the Department in 2017 that Global Hawk was insolvent, the Department would have acted to stop Global Hawk from continuing in business.

99.     By allowing Global Hawk to continue in business, the materially misstated Audited Financial Statements damaged Global Hawk by allowing it to incur operating losses and

25

suffer misappropriations and allowing its insolvency to increase.  The deepened insolvency damaged Global Hawk.  It also damaged Global Hawk's policyholders and other creditors, who will receive smaller distributions on their claims.

### COUNT V – 2017 AUDIT REPORT – NEGLIGENT MISREPRESENTATION

100.    The Liquidator incorporates by reference the allegations of paragraphs 1 - 77 above.

101.    As auditor for Global Hawk, Crowe had a duty to conduct its 2017 audit and issue its audit opinion with due professional care, including a duty to obtain sufficient relevant evidence to afford a reasonable basis for its conclusions.

102.    Crowe breached its duty of care in issuing its 2017 Audit Report opining that the Audited Financial Statements for the year 2017 fairly presented Global Hawk's financial position.  The 2017 Audited Financial Statements materially misstated Global Hawk's assets and did not fairly present Global Hawk's financial position.  Global Hawk was insolvent.

103.    Crowe knew that the Department would rely on representations made in the 2017 Auditor's Report.

104.    In issuing its 2017 Audit Report, Crowe negligently supplied false information for the guidance of others.

105.    The Department reasonably relied upon the representations as to Global Hawk's assets and members' equity (net worth) in the 2017 Audited Financial Statements in allowing Global Hawk to continue doing business.  If Crowe had alerted the Department in 2018 that Global Hawk was insolvent, the Department would have acted to stop Global Hawk from continuing in business.

106.    By allowing Global Hawk to continue in business, the materially misstated Audited Financial Statements damaged Global Hawk by allowing it to incur operating losses and suffer misappropriations and allowing its insolvency to increase.  The deepened insolvency damaged Global Hawk.  It also damaged Global Hawk's policyholders and other creditors, who will receive smaller distributions on their claims.

**COUNT VI – 2018 AUDIT REPORT– NEGLIGENT MISREPRESENTATION**

107.    The Liquidator incorporates by reference the allegations of paragraphs 1 - 77 above.

108.    As auditor for Global Hawk, Crowe had a duty to conduct its 2018 audit and issue its audit opinion with due professional care, including a duty to obtain sufficient relevant evidence to afford a reasonable basis for its conclusions.

109.    Crowe breached its duty of care in issuing its 2018 Audit Report opining that the Audited Financial Statements for the year 2018 fairly presented Global Hawk's financial position.  The 2018 Audited Financial Statements materially misstated Global Hawk's assets and did not fairly present Global Hawk's financial position.  Global Hawk was insolvent.

110.    Crowe knew that the Department would rely on representations made in the 2018 Auditor's Report.

111.    In issuing its 2018 Audit Report, Crowe negligently supplied false information for the guidance of others.

112.    The Department reasonably relied upon the representations as to Global Hawk's assets and members' equity (net worth) in the 2018 Audited Financial Statements in allowing Global Hawk to continue doing business.  If Crowe had alerted the Department in 2019 that

27

Global Hawk was insolvent, the Department would have acted to stop Global Hawk from continuing in business.

113.   By allowing Global Hawk to continue in business, the materially misstated Audited Financial Statements damaged Global Hawk by allowing it to incur operating losses and suffer misappropriations and allowing its insolvency to increase.  The deepened insolvency damaged Global Hawk.  It also damaged Global Hawk's policyholders and other creditors, who will receive smaller distributions on their claims.

## COUNT VII – 2016 AUDIT – BREACH OF CONTRACT

114.   The Liquidator incorporates by reference the allegations of paragraphs 1 - 77 above.

115.   Crowe contracted with Global Hawk to perform the 2016 Audit in accordance with auditing standards generally accepted in the United States of America.

116.   Crowe breached its contractual obligations by issuing the 2016 Auditor's Report without due professional care.

117.   Global Hawk was damaged by Crowe's breaches of contract.  The breaches of contract also damaged Global Hawk's policyholders and other creditors.

118.   All contractual conditions precedent to suit have been satisfied.  In the alternative, the conditions are waived, excused or invalid.  In particular, the time limit on claims provision of the 2016 Engagement Letter is null and void pursuant to 12 V.S.A. § 465.

## COUNT VIII – 2017 AUDIT – BREACH OF CONTRACT

119.   The Liquidator incorporates by reference the allegations of paragraphs 1 - 77 above.

28

120.    Crowe contracted with Global Hawk to perform the 2017 Audit in accordance with auditing standards generally accepted in the United States of America.

121.    Crowe breached its contractual obligations by issuing the 2017 Auditor's Report without due professional care.

122.    Global Hawk was damaged by Crowe's breaches of contract.  The breaches of contract also damaged Global Hawk's policyholders and other creditors.

123.    All contractual conditions precedent to suit have been satisfied.  In the alternative, the conditions are waived, excused or invalid.  In particular, the time limit on claims provision of the 2017 Engagement Letter is null and void pursuant to 12 V.S.A. § 465 and, in any event, entry of the Order of Liquidation tolled that and all other limitations periods pursuant to 8 V.S.A. § 7063(b).

### COUNT IX – 2018 AUDIT – BREACH OF CONTRACT

124.    The Liquidator incorporates by reference the allegations of paragraphs 1 – 77 above.

125.    Crowe contracted with Global Hawk to perform the 2018 Audit in accordance with auditing standards generally accepted in the United States of America.

126.    Crowe breached its contractual obligations by issuing the 2018 Auditor's Report without due professional care.

127.    Global Hawk was damaged by Crowe's breaches of contract.  The breaches of contract also damaged Global Hawk's policyholders and other creditors.

128.    All contractual conditions precedent to suit have been satisfied.  In the alternative, the conditions are waived, excused or invalid.

WHEREFORE, the Liquidator respectfully requests that this Court:

A.    Enter judgment for the Liquidator and against the Defendant in the amount of

      damages proven plus pre-judgment and post-judgment interest;

B.    Award the Liquidator his costs and attorneys' fees; and

C.    Grant such other and further relief as justice may require.

MICHAEL S. PIECIAK, COMMISSIONER OF
THE VERMONT DEPARTMENT OF
FINANCIAL REGULATION, SOLELY AS
LIQUIDATOR OF GLOBAL HAWK
INSURANCE COMPANY RISK RETENTION
GROUP,

By his attorneys,

/s/Jennifer Rood

_____
Jennifer Rood, Assistant General Counsel and
Special Assistant Attorney General
Vermont Department of Financial Regulation
89 Main Street
Montpelier, VT 05620
(802) 828-5672
Jennifer.Rood@vermont.gov

October 26, 2021

Of Counsel:

Eric A. Smith
Margaret C. Fitzgerald
Rackemann, Sawyer & Brewster P.C.
160 Federal Street
Boston, MA 02110
(617) 951-1127
esmith@rackemann.com
mfitzgerald@rackemann.com
(*pro hac vice* motions to be submitted)