U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2022 OCT 17  PM 2: 24

CLERK

BY
DEPUTY CLERK

MICHAEL S. PIECIAK, in his official )
Capacity as Commissioner of the Vermont )
Department of Financial Regulation, solely as )
Liquidator of Global Hawk Insurance )
Company Risk Retention Group, )
)
    Plaintiff, )
)
    v. )    Case No. 2:21-cv-00273
)
CROWE LLP, )
)
    Defendant. )

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**
(Doc. 11)

Plaintiff Michael S. Pieciak brings this action in his official capacity as
Commissioner of the Vermont Department of Financial Regulation ("VDFR"), solely as
Liquidator of Global Hawk Insurance Company Risk Retention Group ("Global Hawk"),
a Vermont nonstock mutual insurance company. The case arises out of alleged fraud
perpetrated by Jasbir Thandi, the controlling officer of Global Hawk. Mr. Thandi
allegedly forged documents and misrepresented Global Hawk's financial position to
conceal Global Hawk's insolvency. Mr. Thandi is a defendant in a separate action
brought by Plaintiff in this District.

Defendant Crowe LLP is an accounting firm that audited Global Hawk's financial
statements in 2016, 2017, and 2018. Plaintiff asserts nine causes of action: negligence by
Defendant in issuing its audit reports in 2016 (Count I), 2017 (Count II), and 2018 (Count
III); negligent misrepresentation by Defendant to VDFR in its audit reports in 2016
(Count IV), 2017 (Count V), and 2018 (Count VI); and breach of contract by Defendant
for, without due professional care, issuing its audit reports in 2016 (Count VII), 2017
(Count VIII), and 2018 (Count IX).

On October 26, 2021, Plaintiff filed his Complaint in Vermont Superior Court, Washington Unit. On November 22, 2021, Defendant removed the case to this court based on diversity jurisdiction. On January 7, 2022, Defendant filed a motion to dismiss Plaintiff's Complaint. (Doc. 11.) On February 4, 2022, Plaintiff opposed the pending motion, and Defendant replied on February 18, 2022. The court held a hearing on June 30, 2022, at the conclusion of which it took the pending motion under advisement.

Plaintiff is represented by Eric A. Smith, Esq., Jennifer Rood, Esq., and Margaret C. Fitzgerald, Esq. Defendant is represented by Caesar A. Tabet, Esq., John M. Fitzgerald, Esq., Jonathan S. Kim, Esq., Jordan E. Wilkow, Esq., and Matthew B. Byrne, Esq.

## I.     Allegations in the Complaint.

Plaintiff is the Commissioner of the VDFR and in that capacity was appointed as Liquidator of Global Hawk by order of the Vermont Superior Court, Washington Unit on June 8, 2020. "He brings this action solely in his capacity as Liquidator of Global Hawk." (Doc. 1-1 at 6, ¶ 1.) Pursuant to the Order of Liquidation, Plaintiff alleges that he is "authorized to prosecute any action on behalf of the creditors, members, policyholders or shareholders of Global Hawk against any officer of Global Hawk or any other person." *Id.* at 6, ¶ 2.

Global Hawk is a Vermont-domiciled insurance company and risk retention group subject to regulation by VDFR. A June 8, 2020 Order of the Vermont Superior Court, Washington Unit declared Global Hawk insolvent and placed it in liquidation. At the time, Mr. Thandi was the sole officer of Global Hawk as well as a director. Global Hawk also had three independent directors.

Defendant is an Indiana limited liability partnership with headquarters in Chicago. It provides accounting, consulting, and audit services to public and private entities. It is licensed as an accounting firm by the Vermont Office of Professional Regulation. It has offices in Burlington, Vermont and Simsbury, Connecticut which were used in the provision of services to Global Hawk.

Global Hawk engaged Defendant, via three separate engagement letters, to audit

2

Global Hawk's financial statements for the years ending December 31, 2016; December 31, 2017; and December 31, 2018. Defendant released its 2016 auditor's report and letter of qualification on June 30, 2017; its 2017 auditor's report and letter of qualification on June 29, 2018; and its 2018 auditor's report and letter of qualification on June 28, 2019.

Each auditor's report stated in relevant part: "We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our qualified audit opinion." *Id.* at 8, ¶ 13. In each auditor's report, Defendant opined that the financial statements attached to the report "present fairly, in all material respects, the financial position of [Global Hawk] . . . in accordance with accounting principles generally accepted in the United States of America." *Id.* at 9, ¶¶ 15-18. Each letter of qualification stated that Defendant understood that Global Hawk intended to file the audited financial statements with VDFR who would "be relying on that information in monitoring and regulating the financial condition of [Global Hawk.]" *Id.* at 9, ¶ 19.

Plaintiff alleges that the audited financial statements for 2016, 2017, and 2018 "each materially misstated the financial position of Global Hawk by representing Global Hawk was solvent when in fact it was insolvent." *Id.* at 11, ¶ 23. Each audited financial statement allegedly "falsely report[ed] capital contributions as received, when the contributions had not been made[,]" and "omitt[ed] loan liabilities and pledges of Global Hawk's assets." *Id.* The 2017 and 2018 audited financial statements also "overstat[ed] cash balances." *Id.* Plaintiff cites specific failures by Defendant and asserts that Defendant "had a duty to conduct its audit and issue its auditor's reports with due professional care[,]" including (1) "a duty to identify and assess the risks of material misstatement, whether due to fraud or error, at the financial statement and relevant assertion levels[,]" (2) "a duty to obtain sufficient and appropriate audit evidence regarding the assessed risks of material misstatement by designing and implementing appropriate responses to those risks, including appropriate external confirmations[,]" (3) "a duty to select an appropriate confirming party and to ask appropriate questions" in its "external confirmation procedures," and (4) "a duty to evaluate confirmations received to assess their reliability and, where they were unreliable, to obtain additional

3

confirmations." (Doc. 1-1 at 14, ¶ 32.)

In 2016, 2017, and 2018, Plaintiff contends Defendant "breached its obligation to audit [Global Hawk] and issue its audit opinions with due professional care" by failing to confirm financial information used in its audits with appropriate external parties and failing to evaluate whether the external confirmation it received provided reliable audit evidence. *See* Doc. 1-1 at 14-24, ¶¶ 33-68. Plaintiff alleges that if Defendant had properly audited Global Hawk, it would have closed in 2017 because the material misstatements in Global Hawk's financial statements and its insolvency would be known.

Plaintiff alleges that submitting "materially misstated" audited financial statements to VDFR enabled Global Hawk to "incur operating losses and suffer misappropriations" and "allow[ed] its insolvency to increase." *Id.* at 26, ¶ 77. "The deepened insolvency harmed Global Hawk[,]" and it "harmed Global Hawk's policyholders and other creditors, who will receive smaller distributions on their claims in the liquidation." *Id.*

## II.    Conclusions of Law and Analysis.

### A.    Motion to Dismiss Legal Standard.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Parties must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Id.*

4

(citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a party will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

"Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises . . . an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000). "[M]otions to dismiss a plaintiff's complaint under Rule 12(b)(6) on the basis of an affirmative defense will generally face a difficult road" because the court must still "accept as true the material facts alleged in the complaint and draw all reasonable inferences in plaintiffs' favor." *Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2015) (alterations adopted) (internal quotation marks and citations omitted).

## B. Choice of Law.

Defendant concedes that Vermont law applies to Plaintiff's non-contract claims "because Vermont has the most significant relationship to the facts alleged." (Doc. 11 at 6-7.) Defendant contends that Illinois law applies to Plaintiff's contract claims and Defendant cites the engagement agreements between it and Global Hawk which state: "This Agreement must be construed, governed, and interpreted under the laws of the State of Illinois, without regard for choice of law principles." *Id.* at 6.

Because the court is sitting in diversity, it "must look to the laws of the forum state to resolve issues regarding conflicts of law." *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996); *see also Bigio v. Coca-Cola Co.*, 675 F.3d 163, 169 (2d Cir. 2012) ("In cases where jurisdiction is based on the diversity of the parties' citizenship, a federal court will apply the choice-of-law rules of the forum state[.]") (citation omitted).

Under Vermont law, "[t]he threshold question in choice-of-law analysis is whether a conflict exists." *Rodrigue v. Illuzzi*, 2022 VT 9, ¶ 13, 278 A.3d 980, 986. Vermont

courts "avoid choice-of-law questions where application of laws of both jurisdictions would produce same result." *Id.* (citing *Havill v. Woodstock Soapstone Co.*, 783 A.2d 423, 427 (Vt. 2001)). Defendant, as the proponent of non-Vermont law, "bears the burden of demonstrating that [Illinois] law conflicts with Vermont law." *In re Ambassador Ins. Co.*, 2022 VT 11, ¶ 17, 275 A.3d 122, 127.

If there is a conflict, Vermont applies "the analysis set forth in the Restatement (Second) of Conflict of Laws[.]" *Id.* at ¶ 15, 275 A.3d at 126. Section 187 of the Restatement provides that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflict of Laws § 187(1) (1971). "Whether the parties could have determined a particular issue by explicit agreement directed to that issue is a question to be determined by the local law of the state selected by application of the rule of § 188." *Id.* at cmt. c.

"[T]he rule of § 188[,]" *id.,* "essentially asks [the court] to consider several factors to determine which state has the most significant relationship to the . . . contract." *In re Ambassador Ins. Co.*, 2022 VT 11, ¶ 15, 275 A.3d at 126 (citing *Martineau v. Guertin*, 751 A.2d 776, 778 (Vt. 2000)). Relevant factors include "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties[,]" which must be "evaluated according to their relative importance with respect to the particular issue." Restatement (Second) of Conflict of Laws § 188(2).

"[E]ven if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue," their choice of law will be applied unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> 
> (b) application of the law of the chosen state would be contrary to a

6

fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* at § 187(2).

The court must "conduct the choice-of-law analysis separately for each of the Plaintiff['s] claims." *Bigio*, 675 F.3d at 169 (citing *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 383 (2d Cir. 2006)); *see also Miller*, 702 A.2d at 394 ("We emphasize that the Restatement (Second) calls for an issue-by-issue determination of choice-of-law questions. Thus, it is possible that within one case, the law of one jurisdiction will apply to one issue and the law of another jurisdiction to another issue.").

In this case, at the pleading stage, the court cannot make a choice of law determination without additional facts, although it agrees with Defendant that its engagement agreements support the application of Illinois law. The court therefore analyzes Plaintiff's contract claims under both Illinois and Vermont law.

## C.      Whether Plaintiff Has Plausibly Alleged a Breach of a Duty for its Negligence Claims.

Plaintiff alleges that in its audits of Global Hawk in 2016, 2017, and 2018, Defendant "breached its obligations to audit and issue its audits opinions with due professional care" by failing to confirm financial information used in its audit with appropriate external parties and failing to evaluate whether the external confirmation it did receive provided reliable audit evidence. *See* Doc. 1-1 at 14-24, ¶¶ 33-68 (providing detailed factual allegations of breach). Defendant argues these allegations are insufficient to allege a breach of duty of care because (1) "Generally Accepted Auditing Standards [("GAAS")], promulgated by the American Institute of Certified Public Accountants (AICPA), are the accepted standards of practice for auditors[,]" *In re Sharp Int'l Corp.*, 278 B.R. 28, 33 (Bankr. E.D.N.Y. 2002); and (2) GAAS recognize that even proper audit procedures may be ineffective for detecting intentional misstatements. As a result, Defendant contends it cannot be held liable for breach of any audit standard.

As a threshold issue, Plaintiff has not waived any claims that Defendant has

7

violated GAAS. As this court explained:

> Deloitte also argues that the complaint does not cite the specific accounting standards that were violated. To hold that plaintiffs in accountant liability cases are required, prior to discovery, to cite specific accounting rules would be inconsistent with Fed. R. Civ. P. 8(a), which requires "a short and plain statement of the claim." In any case, plaintiff has alleged specific omissions in the audited financial statements11. Whether these omissions constitute professional negligence is a question of fact that cannot be determined on a motion to dismiss.

*Nordica USA, Inc. v. Deloitte & Touche*, 839 F. Supp. 1082, 1089 (D. Vt. 1993).

Assuming *arguendo* that GAAS are the applicable standards, both Illinois and Vermont law generally require expert witness testimony to establish those standards and address how a defendant departed from them.[1] Without weighing the facts and assessing credibility, the court cannot find Defendant complied with GAAS as a matter of law. At the pleading stage, Plaintiff has thus plausibly alleged a breach of an applicable duty of care.

As for Defendant's second ground for dismissal, this court has previously rejected the argument that an auditor is entitled to dismissal because audit errors might have occurred even if it the audit was properly conducted. In *Nordica USA, Inc.*, the defendant auditor argued that the plaintiff's allegations were "insufficient because inaccuracies do not, in and of themselves, signify *ipso facto* that an audit was improperly conducted." *Id.* The court held that "[w]hile this may indeed be true, it does not follow that [the auditor]

---

[1] *See Studt v. Sherman Health Sys.*, 951 N.E.2d 1131, 1136 (Ill. 2011) ("In professional negligence cases, the plaintiff bears a burden to establish the standard of care through expert witness testimony. This requirement is based on the simple fact that without expert testimony, jurors, not skilled in the profession, are not equipped to judge the professional's conduct.") (alteration adopted) (internal quotation marks and citations omitted); *see also Est. of Fleming v. Nicholson*, 724 A.2d 1026, 1028 (Vt. 1998) (citation omitted):

> Generally, negligence by professionals is demonstrated using expert testimony to: (1) describe the proper standard of skill and care for that profession, (2) show that the defendant's conduct departed from that standard of care, and (3) show that this conduct was the proximate cause of plaintiff's harm. If the alleged negligent conduct is a matter of judgment unique to that profession, the above elements must be established by expert testimony to assist the trier of fact in determining negligence.

8

is entitled to dismissal because the alleged inaccuracies might not have resulted from an improper audit." *Id.* The court noted that the auditor's argument was the "inverse" of the proper Rule 12(b)(6) standard: "that because a set of facts may exist under which plaintiff might not recover, the defendant is entitled to dismissal. This is not the case." *Id.* at 1089 n.10. The same conclusion is warranted here.

Because Plaintiff has plausibly alleged that Defendant breached a duty of care, Defendant's motion to dismiss Plaintiff's negligence claims (Counts I, II, III, IV, V, and VI) for failure to state a claim is DENIED.

## D. Whether Defendant's Efficient Intervening Cause Defense Bars Plaintiff's Claims.

Defendant asserts that its conduct was not the proximate cause of Plaintiff's harm because Mr. Thandi's conduct was an efficient intervening cause that broke the chain of causation. "An efficient, intervening cause is a new and independent force that breaks the chain of causal connection between the original wrong and the ultimate result." *Est. of Sumner v. Dep't of Soc. & Rehab. Servs.*, 649 A.2d 1034, 1036 (Vt. 1994). As the Second Circuit has explained, it is "no affirmative defense to assert that an intervening cause broke the chain of causation, because the intervening cause challenge[s] 'an integral part' of the causation element of [a] claim." *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F.4th 50, 63 (2d Cir. 2021) (quoting *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 527 (2d Cir. 2004)). In other words, Plaintiff must plausibly allege causation notwithstanding other potential causes of its damages.

Plaintiff asserts that Mr. Thandi's fraud occurred prior to the alleged negligence by Defendant, which would preclude Mr. Thandi's fraud from "intervening" status. The ultimate determination of probable cause, including Defendant's efficient intervening cause defense, is likely to be a jury question. *See Fritzeen v. Trudell Consulting Eng'rs, Inc.*, 751 A.2d 293, 297 (Vt. 2000) ("Proximate cause is ordinarily an issue to be resolved by the jury unless the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way.") (quoting *Roberts v. State*, 514 A.2d 694, 696 (Vt. 1986)) (internal quotation

marks and citation omitted); *Simmons v. Am. Drug Stores, Inc.*, 768 N.E.2d 46, 53 (Ill. Ct. App. 2002) ("Proximate cause is an issue of fact to be determined by the jury."). At the pleading stage, Plaintiff has plausibly alleged that Defendant's conduct "harmed" Global Hawk and its "policyholders and other creditors" (Doc 1-1 at 26, ¶ 77) by deepening Global Hawk's insolvency and by failing to take reasonable steps to uncover Global Hawk's fraud despite an arguable duty and ample opportunity to do so.

For the foregoing reasons, Defendant's motion to dismiss based on an efficient intervening cause defense is DENIED.

## E.    Whether Plaintiff Has Plausibly Alleged Damages.

Defendant argues that Plaintiff has failed to plausibly allege damages because Plaintiff's theory of damages is based on a claim that the "materially misstated Audited Financial Statements" allowed Global Hawk "to incur operating losses and suffer misappropriations" and allowed "its insolvency to increase[,]" which "harmed Global Hawk" and "harmed Global Hawk's policyholders and other creditors, who will receive smaller distributions on their claims in the liquidation." (Doc. 1-1 at 26, ¶ 77.) Defendant argues that "forestalling liquidation is [not] inherently harmful to the corporation[,]" that "'deepening of a firm's insolvency is not an independent form of corporate damage,'" and that the real harm was simply a missed opportunity by Global Hawk "'to turn the company around[.]'" (Doc. 11 at 18) (citing *In re CitX Corp.*, 448 F.3d 672, 678 (3d Cir. 2006)).

Defendant cites no cases applying Vermont or Illinois law which have addressed this issue. Courts elsewhere are split as to whether deepening insolvency is a viable theory of damages. *Compare Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 350 (3d Cir. 2001) ("In recent years, a number of federal courts have held that 'deepening insolvency' may give rise to a cognizable injury[.]") (collecting cases), *with In re Oakwood Homes Corp.*, 340 B.R. 510, 531 (Bankr. D. Del. 2006) ("[A]lthough many courts have rejected the theory of deepening insolvency, other courts continue to accept its validity.") (collecting cases). Notwithstanding this split in authority, as the Third Circuit has explained, as a theory of damages, deepening insolvency is "essentially

10

sound." *R.F. Lafferty & Co.*, 267 F.3d at 349, because "deepening insolvency can undermine a corporation's relationships with its customers, suppliers, and employees[,]" and taking on further debt can "cause the dissipation of corporate assets" and "force an insolvent corporation into bankruptcy, thus inflicting legal and administrative costs on the corporation." *Id.* at 349-50. Contrary to Defendant's characterization, *In re CitX Corp.* does not reject the theory of deepening insolvency. Instead, the Third Circuit held that:

> the deepening of a firm's insolvency is not an independent form of corporate damage. Where an independent cause of action gives a firm a remedy for the increase in its liabilities, the decrease in fair asset value, or its lost profits, then the firm may recover, without reference to the incidental impact upon the solvency calculation.

*In re CitX Corp.*, 448 F.3d 678 (brackets and internal quotation marks omitted).

The Second Circuit has recognized that "[a] corporation is not a biological entity for which it can be presumed that any act which extends its existence is beneficial to it." *In re CBI Holding Co.*, 529 F.3d 432, 453 (2d Cir. 2008) (quoting *Bloor v. Dansker*, 523 F. Supp. 533, 541 (S.D.N.Y. 1980)). "Prolonging a corporation's existence in the face of ever increasing insolvency may be 'doing no more than keeping the enterprise perched at the brink of disaster.'" *Id.* (quoting *Mirror Grp. Newspapers v. Maxwell Newspapers, Inc.*, 164 B.R. 858, 869 (Bankr. S.D.N.Y. 1994)). "Even the 'benefit' provided by 'further indebtedness'—capital—'may provide an illusory financial cushion that lulls shareholders into postponing the decision to dissolve the corporation' and thus 'miss an opportunity to cut their losses.'" *Id.* (quoting *Allard v. Arthur Andersen & Co.*, 924 F. Supp. 488, 494 (S.D.N.Y. 1996)).

The Seventh Circuit, applying Illinois law, found that cases rejecting the deepening insolvency theory "rest[] upon a seriously flawed assumption, *i.e.*, that the fraudulent prolongation of a corporation's life beyond insolvency is automatically to be considered a benefit to the corporation's interests." *Schacht v. Brown*, 711 F.2d 1343, 1350 (7th Cir. 1983). "This premise collides with common sense, for the corporate body is ineluctably damaged by the deepening of its insolvency, through increased exposure to creditor liability." *Id.* (citation omitted). "Indeed, in most cases, it would be crucial that

11

the insolvency of the corporation be disclosed, so that shareholders may exercise their right to dissolve the corporation in order to cut their losses." *Id.* "Thus, acceptance of a rule which would bar a corporation from recovering damages due to the hiding of information concerning its insolvency would create perverse incentives for wrong-doing officers and directors to conceal the true financial condition of the corporation from the corporate body as long as possible." *Id.*

Under Second Circuit precedent, the court should defer to the Seventh Circuit's interpretation of Illinois law.

> Where, as here, the pertinent [federal] court of appeals has essayed its own prediction of the course of state law on a question of first impression within that state, the federal courts of other circuits should defer to that holding, perhaps always, and at least in all situations except the rare instance when it can be said with conviction that the pertinent court of appeals has disregarded clear signals emanating from the state's highest court pointing toward a different rule.

*Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 283 (2d Cir. 1981).

Illinois courts have adopted the position of the Connecticut courts that, in the insurance context, "the company itself has an enforceable claim against any person or entity who unlawfully contributed materially to its insolvency by violating a legal duty to advise it, either directly or through the [state insurance] Commissioner, as to its true financial status" because "the Commissioner had the right and duty to take it over and manage its affairs on behalf of the public if its insolvency was threatened[.]" *Reider v. Arthur Andersen, LLP*, 784 A.2d 464, 475 (Conn. Super. Ct. 2001); *see also McRaith v. BDO Seidman, LLP*, 391 Ill. App. 3d 565, 592, 909 N.E.2d 310, 334 (Ill. Ct. App. 2009) ("We find the holding and reasoning in *Reider* applicable [under Illinois law.]").

While some courts have held that deepening insolvency is not a viable theory in a negligence action, *see In re Oakwood Homes Corp.*, 340 B.R. at 534 (requiring "fraudulent conduct[,] not mere negligence"), *Reider* requires only a "violati[on of] a legal duty[.]" 784 A.2d at 475. Courts in the Second Circuit have thus allowed negligence claims to proceed based on a deepening insolvency theory of damages. *See, e.g.*, *Allard*, 924 F. Supp. at 494 (allowing negligence claims to proceed to trial on a "deepening

12

insolvency" theory) (internal quotation marks omitted); *In re Gouiran Holdings, Inc.*, 165 B.R. 104, 107 (E.D.N.Y. 1994) (rejecting motion to dismiss because "two years of negligently prepared financial statements could have been a substantial cause of [company's] incurring unmanageable debt and filing for bankruptcy protection").

Because deepening insolvency is a viable theory of damages, Defendant's motion to dismiss for failure to plausibly allege damages is DENIED.

**F.    Whether Defendant's *In Pari Delicto* Defense Bars Plaintiff's Claims.**

Defendant argues that Plaintiff stands in the shoes of Global Hawk and therefore dismissal is warranted based on Defendant's affirmative defense of *in pari delicto*. "The *in pari delicto* doctrine prevents a party from seeking to recover against others for a wrong in which the party participated or is deemed through 'imputation' to have participated." *In re ICP Strategic Income Fund, Ltd.*, 730 F. App'x 78, 81 (2d Cir. 2018) (citations omitted). "The equitable defense of *in pari delicto*, which literally means 'in equal fault,' is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." *Pinter v. Dahl*, 486 U.S. 622, 632 (1988) (citation omitted); *see also In re Refco Sec. Litig.*, 779 F. Supp. 2d 372, 374 n.1 (S.D.N.Y. 2011) (holding *in pari delicto* "embraces a comparable principle" to the equitable doctrine of unclean hands but applies "in the context of a suit for damages"), *aff'd sub nom. Krys v. Butt*, 486 F. App'x 153 (2d Cir. 2012).

Plaintiff counters that Mr. Thandi's actions cannot be attributed to Global Hawk under agency law because he was acting adverse to Global Hawk's interests. *See Mann v. Adventure Quest, Inc.*, 2009 VT 38, ¶ 12, 186 Vt. 14, 20, 974 A.2d 607, 612 ("When an agent's interests in the subject matter are so adverse as to practically destroy the agency relationship, there is no imputation of knowledge to the principal."). Defendant replies that the adverse interest exception is unavailable under the "sole actor" exception, which applies "when an agent controls and dominates the corporation." *Id.* at ¶ 12, 186 Vt. at 22, 974 A.2d at 612.

Mr. Thandi's actions, the scope of the agency, and the effects on Global Hawk are all questions of fact that cannot be resolved on a motion to dismiss. Even without

13

questions of fact, the court could not hold as a matter of law that *in pari delicto* is available as an affirmative defense. To the contrary, in some states, such as Connecticut, because of the public interest in the continued functioning of the insurance industry, fraudulent conduct by a principal cannot be imputed to an insurance company as a matter of law. *See Reider*, 784 A.2d at 475 ("The fraud of the . . . sole owners and shareholders[] was a fraud upon [the insurance company], not a fraud by it. The [principals'] fraud is not imputable to [the company] because their interests were always adverse to the public's enforceable interest in ensuring the insurer's continuing solvency.") (emphasis omitted). Thus, even if Mr. Thandi's actions could be attributed to Global Hawk, Plaintiff argues they should not be attributed to him as liquidator because under Illinois law:

> [*I*]*n pari delicto* doctrine cannot apply because the Liquidator, by statutory definition, is not the wrongdoer; rather, he serves to protect the insurance industry and the public interest by ensuring the victims of the misconduct can recover monies entitled to them. To equate the Liquidator with [the wrongdoer] under *in pari delicto* is illogical and unavailing.

*McRaith*, 391 Ill. App. 3d at 595, 909 N.E.2d at 336; *cf. Nicholson v. Shapiro & Assocs., LLC*, 82 N.E.3d 529, 533 (Ill. App. Ct. 2017) ("[D]octrine of *in pari delicto* does not bar a court-appointed SEC receiver from bringing suit on behalf of a company against the company's outside auditor for allegedly failing to discover the fraud and/or illegal acts of the company's sole owner.").

As the issue is one of first impression in Vermont, this court must predict whether the Vermont Supreme Court would hold that the fraudulent acts of the wrongdoer must be imputed to its liquidator. *See Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000) ("Absent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law."); *see also Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 307 (1985) (noting that, traditionally, "public policy considerations that undergirded the *in pari delicto* defense were frequently construed as precluding the defense even where the plaintiff bore substantial fault for his injury") (citation omitted). In this case, the court predicts the Vermont Supreme Court would agree with the Seventh Circuit that the crux of the *in pari*

*delicto* doctrine "is that the wrongdoer must not be allowed to profit from his wrong" but because "[t]he appointment of [a] receiver remove[s] the wrongdoer from the scene . . . the defense of *in pari delicto* loses its sting [because] when the person who is *in pari delicto* [has been] eliminated." *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995). The issue, however, does not readily lend itself to resolution as a matter of law. As Justice Stevens observed,

> Cases like this one . . . present a special problem. They raise issues, such as the imputation question here, that may not have been definitively settled in the state jurisdiction in which the case is brought, but that nevertheless must be resolved by federal courts. . . . As matters stand, however, federal judges must do their best to estimate how the relevant state courts would perform their lawmaking task, and then emulate that sometimes purely hypothetical model.

*O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 90 (1994) (Stevens, J., concurring) (joined by Blackmun, O'Connor, Souter, JJ.). Here, resolution of this "special problem[,]" *id.*, would benefit from the development of a factual record. *See Mansfield Heliflight, Inc. v. Freestream Aircraft USA, Ltd.*, 2016 WL 7176586, at *14 (D. Vt. Dec. 7, 2016) ("At the pleading stage, dismissal of a novel claim without the benefit of discovery and a factual record is not warranted.") (citing *Adato v. Kagan*, 599 F.2d 1111, 1117 (2d Cir. 1979)).

Even if Mr. Thandi's fraud could not be imputed to Plaintiff, Defendant argues that "[a]n audit client cannot complain that its auditor negligently prepared its audit report where the audit client—through fraud or other intentional misconduct— deliberately impeded the auditor's preparation of the report." (Doc. 11 at 9) (citing, *inter alia*, *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 950-54 (N.Y. 2010)). The Vermont Supreme Court, however, has held that "a client's own intentional wrongful conduct does not automatically shield [a professional] from all liability." *State v. Therrien*, 2003 VT 44, ¶ 22, 175 Vt. 342, 350, 830 A.2d 28, 35. "The *in pari delicto* doctrine serves as a bar against a defendant's liability only where the plaintiff has been guilty of illegal or fraudulent conduct and was equally or more culpable than the defendant or acted with the same or greater knowledge as to the illegality or wrongfulness of the transaction." *Id.* at ¶ 22, 175 Vt. at 351, 830 A.2d at 36 (internal quotation marks, alterations, and citation

omitted); *see also Vt. Accident Ins. Co. v. Fletcher*, 89 A. 480, 482 (Vt. 1914) ("Both parties to a transaction may be in delicto, and yet not in pari delicto.") (citations omitted). Illinois recognizes an "exception[] to the availability of the *in pari delicto* defense" when "there is no parity in the culpability of the parties[.]" *Vine St. Clinic v. HealthLink, Inc.*, 856 N.E.2d 422, 436 (Ill. 2006).

Because the *in pari delicto* defense is often fact-intensive and requires the weighing of the evidence, it cannot be resolved for purposes of the pending motion to dismiss other than to conclude that the doctrine may not be available in the facts and circumstances of this case. *See Republic of Iraq v. ABB AG*, 768 F.3d 145, 162 (2d Cir. 2014) ("Comparison of the parties' degree of fault, and thus the applicability of [*in pari delicto*], will often depend on findings of fact as to the circumstances of a plaintiff's involvement."). "Although . . . some courts have applied this doctrine in the context of a motion to dismiss, the better approach is to await a factual record to make this determination." *Goldberg v. Saint-Sauveur Valley Resorts, Inc.*, 2018 WL 8370060, at *13 (D. Vt. Dec. 20, 2018).

For the foregoing reasons, Defendant's motion to dismiss based on its *in pari delicto* affirmative defense is DENIED.

### G. Whether Plaintiff's Breach of Contract Claims Must Be Dismissed Because of Prior Material Breaches by Global Hawk.

Defendant argues that Plaintiff's breach of contract claims must be dismissed because of Global Hawk's prior material breaches of the same contract. Plaintiff claims that this defense presents issues of fact as to whether Mr. Thandi's fraud "vitiate[d] [Defendant's] audit obligations." (Doc. 17 at 19.)

Prior material breach is an affirmative defense asserted when a party breaches a contract only after the other party has materially breached the same contract. *See VanVelsor v. Dzewaltowski*, 385 A.2d 1102, 1104 (Vt. 1978) (recognizing defendants' counterclaim in breach of contract case in which they alleged "plaintiff's prior breaches forced defendants to terminate the contract" and defendants "sought damages for their cost in curing alleged defects in the work and in completing the contract"). It reflects the

16

principle that "it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time." Restatement (Second) of Contracts § 237.

Both Illinois law and Vermont law recognize a prior material breach as a defense to a breach of contract claim. *See Dubey v. Pub. Storage, Inc.*, 918 N.E.2d 265, 284 (Ill. Ct. App. 2009) ("[A] party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him, nor can he recover damages from the other party to the contract.") (citation omitted); *N. Aircraft, Inc. v. Reed*, 572 A.2d 1382, 1388 (Vt. 1990) (relying on Restatement (Second) of Contracts § 237). "The determination whether a material breach has occurred is generally a question of fact." *Kuhbier*, 239 F. Supp. 3d at 735 (internal quotation marks omitted) (quoting 23 Williston on Contracts § 63:3 (4th ed.)) (collecting cases); *accord Mohanty v. St. John Heart Clinic, S.C.*, 866 N.E.2d 85, 96 (Ill. 2006) ("[W]hether or not a material breach of contract has been committed is a question of fact[.]"); *Vt. Structural Steel Corp. v. Brickman*, 236 A.2d 658, 661 (Vt. 1967) ("Whether there has been a substantial performance of a contract is ordinarily one of fact.").

While Plaintiff's Complaint alleges that Mr. Thandi made false and material misrepresentations to Defendant, it does not characterize those acts and omissions as material breaches of Global Hawk's promises. Instead, Plaintiff alleges that "[a]ll contractual conditions precedent to suit have been satisfied" or "are waived, excused[,] or invalid." (Doc. 1-1 at 32-33, ¶¶ 118, 123, 128.) As Plaintiff points out, if Mr. Thandi's fraud was a prior material breach of Global Hawk's and Defendant's contract, "an auditor would have no reason to perform its contractual obligations to audit for misstatements due to fraud." (Doc. 17 at 19.)

At the pleading stage, the court cannot determine as a matter of law whether Global Hawk materially breached its contracts with Defendant prior to Defendant's own alleged breach. Accordingly, Defendant's motion to dismiss Plaintiff's breach of contract claims due to a prior material breach is DENIED.

### H.    Whether Count VII Must Be Dismissed as Time Barred.

Defendant claims that Plaintiff's breach of contract for the 2016 audit claim

(Count VII) is time-barred because the August 23, 2016 engagement letter governing the

2016 audit (the "2016 Engagement Letter") provides that:

> [i]n no event will any action against [Defendant], arising from or relating to
> this engagement letter or the Services provided by Crowe relating to this
> engagement, be brought after the earlier of 1) two (2) years after the date on
> which occurred the act or omission alleged to have been the cause of the
> injury alleged; or 2) the expiration of the applicable statute of limitations[.]

(Doc. 11-2 at 9.) The 2016 Engagement Letter provides that it must be "construed,

governed, and interpreted under the laws of the State of Illinois, without regard for choice

of law principles." *Id.* at 6. The 2016 audit report was issued on June 30, 2017. The

parties agree that Plaintiff's claims were not brought until 2020, more than two years

after the report was issued.

On a motion to dismiss, the court may consider not only the allegations in a

complaint, but documents and information incorporated by reference, integral to it, or

subject to judicial notice. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458

F.3d 150, 156 (2d Cir. 2006). Because the Complaint "relies heavily upon [the] terms and

effect" of the 2016 Engagement Letter, it is integral to the Complaint. *Chambers v. Time

Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v.

Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (taking judicial notice of an underlying

contract)); *see also Glob. Network Commc'ns, Inc.*, 458 F.3d at 157 (noting that "[i]n

most instances" an integral document "is a contract or other legal document containing

obligations upon which the plaintiff's complaint stands or falls").

Under Vermont law, "[e]xcept as otherwise provided by statute, any provision in a

contract which limits the time in which an action may be brought under the contract or

which waives the statute of limitations shall be null and void." 12 V.S.A. § 465. Under

Illinois law, however, "[t]he parties to a contract may agree to a shortened contractual

limitation period to replace a statute of limitations, so long as it is reasonable." *Country

Preferred Ins. Co. v. Whitehead*, 979 N.E.2d 35, 43 (Ill. 2012). Defendant argues a

two-year limitation period is reasonable. It points out that in light of the parties' choice of
Illinois law, this claim should be barred at the pleading stage. In contrast, Plaintiff
contends that Global Hawk was subject to regulation by the VDFR, which Defendant
cannot avoid by a choice of law provision that violates Vermont law.

Whether the parties could have agreed to a limitation period "by an explicit
provision in their agreement[,]" *id.* at § 187(1), and which state's law is applicable even if
the parties "could not have" agreed to a limitation period, *id.* at § 187(2), are "fact-
intensive inquiries that would be premature to resolve at the motion-to-dismiss stage."
*Bristol-Myers Squibb Co. v. Matrix Lab'ys Ltd.*, 655 F. App'x 9, 13 (2d Cir. 2016)
(collecting cases); *see also Nunes v. Cable News Network, Inc.*, 31 F.4th 135, 150 (2d
Cir. 2022) (Menashi, J, dissenting) ("If 'the complaint itself leaves unanswered questions
about critical aspects of the pertinent facts,' a court 'is well-advised to refrain from
making an immediate choice-of-law determination. After all, when there are important
holes in the record, discovery will likely illuminate critical facts bearing on the
unanswered questions and, thus, on the ultimate question of which state's law should
apply.'") (quoting *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 42-43 (1st Cir.
2020)). Because the court lacks facts regarding which state has the most significant
relationship to this issue, it proceeds no further. At the pleading stage, "a statute of
limitations defense may be decided on a Rule 12(b)(6) motion [only] if the defense
appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d
791, 798 n.12 (2d Cir. 2014) (internal quotation marks omitted).

For the foregoing reasons, Defendant's motion to dismiss Count VII as time
barred is DENIED.

## I.      Whether Counts I, IV, and VII Are Barred by a Contractual
Limitation on Damages.

Defendant argues that consequential damages relating to the 2016 audit are
precluded by the exculpatory clause in 2016 Engagement Letter which provides that
"[a]ny liability of [Defendant] will not include any special, consequential, incidental,
punitive, or exemplary damages or loss nor any lost profits, goodwill, savings, or

19

business opportunity, even if [Defendant] had reason to know of the possibility of such damages." (Doc. 11-2 at 9.)

Plaintiff concedes that his claims regarding the 2016 audit (Counts I, IV, and VII) seek only consequential damages. He claims that (1) Defendant waived the exculpatory clause by representing it was in compliance with standards that prohibit indemnification clauses with respect to an audit; (2) the exculpatory clause does not apply to negligence claims; and (3) the exculpatory clause is void as a matter of public policy.

### 1.     Whether Defendant Waived the Exculpatory Clause.

Plaintiff argues that Defendant waived the exculpatory clause by representing to Global Hawk in its June 30, 2017 letter of qualification which accompanied the 2016 audit report (the "2016 Letter of Qualification") that it was "in compliance with the requirements of Section 7 of the [National Association of Insurance Commissioners'] Annual Financial Reporting Model Regulation 'Requiring Annual Audited Financial Reports' regarding qualifications of independent certified public accountants[,]" (Doc. 17-1 at 3), which provides that a firm is not a "qualified independent certified public accountant" if it has "directly or indirectly entered into an agreement of indemnity or release from liability . . . with respect to the audit or the insurer." (Doc. 17-4 at 5.) Defendant argues that "Plaintiff is advocating for a finding of waiver by operation of law, which is simply not permitted." (Doc. 18 at 5.)

Because the Complaint "relies heavily upon [the] terms and effect" of the 2016 Letter of Qualification, it is integral to it and may be considered by the court on a motion to dismiss. *Chambers*, 282 F.3d at 153 (quoting *Int'l Audiotext Network, Inc.*, 62 F.3d at 72); *see also* Doc. 1-1 at 9-10, ¶¶ 19-20 (quoting from 2016 Letter of Qualification at length).

Waiver is the "intentional relinquishment of a known right." *W. Cas. & Sur. Co. v. Brochu*, 475 N.E.2d 872, 878 (Ill. 1985); *accord KPC Corp. v. Book Press, Inc.*, 636 A.2d 325, 327 (Vt. 1993) ("A waiver is a voluntary relinquishment of a known right."). While "[w]aiver arises from an affirmative act and not by operation of law[,]" *Brochu*, 475 N.E.2d at 878, it may be implied from words and conduct. *Id.*; *accord Anderson v.*

*Coop. Ins. Cos.*, 2006 VT 1, ¶ 10, 179 Vt. 288, 291, 895 A.2d 155, 159. As the Vermont

Supreme Court has explained:

> In assessing a claim of implied waiver, "caution must be exercised both in
> proof and application." [*Holden & Martin Lumber Co. v. Stuart*, 108 A.2d
> 387, 389 (Vt. 1954).] To succeed on an implied waiver theory, plaintiff
> must show "some act or conduct on the part of defendant[ ] that was
> unequivocal in character." *West River Power Co. v. Bussino*, 111 Vt. 137,
> 139, 11 A.2d 263, 264 (1940). As other jurisdictions have recognized,
> implied waiver blurs the line between the doctrines of waiver and estoppel.
> *See, e.g.*, *Brown v. Taylor*, 120 N.M. 302, 901 P.2d 720, 723 (1995)
> ("Waiver implied from a course of conduct may be termed a waiver by
> estoppel."); *Gitter v. Tenn. Farmers Mut. Ins. Co.*, 60 Tenn. Ct. App. 698,
> 450 S.W.2d 780, 784 (1969) ("[I]mplied waiver partakes of what is referred
> to as waiver by estoppel."). Thus, to prove implied waiver, a plaintiff must
> show that she honestly and reasonably believed, based on the defendant's
> conduct, that the defendant would forego asserting some right to which it
> was otherwise entitled, and that the plaintiff acted to her detriment in
> reliance on that belief. *Brown*, 901 P.2d at 723-24; *Gitter*, 450 S.W.2d at
> 785.

*Anderson*, 2006 VT 1, ¶ 11, 179 Vt. at 291, 895 A.2d at 159.

Evaluating Plaintiff's implied waiver argument requires a fact-intensive inquiry.

*See Great Am. Ins. Co. v. M/V HANDY LAKER*, 2002 WL 32191640, at *7 (S.D.N.Y.

Dec. 20, 2002) ("[C]ourts generally hold that whether waiver has been established by the

conduct of the parties during the performance of the contract is a question of fact.")

(collecting cases), *aff'd sub nom. Great Am. Ins. Co. v. M/V HANDY LAKER*, 348 F.3d

352 (2d Cir. 2003). As a result, "the issue of whether a given contract right has been

waived is typically 'inappropriate for resolution on a motion to dismiss.'" *Eastman

Chem. Co. v. Nestle Waters Mgmt. & Tech.*, 2012 WL 4474587, at *2 (S.D.N.Y. Sept. 28,

2012) (quoting *Schonberger v. Serchuck*, 742 F. Supp. 108, 114 (S.D.N.Y. 1990)).

Plaintiff has plausibly raised an issue of waiver, and Defendant's motion to dismiss

Count VII as barred by the exculpatory clause must therefore be DENIED.

### 2. Whether the Exculpatory Clause Applies to Negligence Claims.

Plaintiff asserts the exculpatory clause is insufficiently specific to cover

negligence liability and refers to contractual liability only. Defendant counters that the

broad disclaimer in its 2016 Engagement Letter includes all tort liability because it would have been superfluous to limit punitive damages if it only applied to contractual liability as punitive damages are generally unavailable for a breach of contract claim.

Vermont and Illinois law are in accord that "contractual exclusions of negligence liability are traditionally disfavored" and must be "strictly construe[d]" "against the party relying on it." *Thompson v. Hi Tech Motor Sports, Inc.*, 2008 VT 15, ¶ 17, 183 Vt. 218, 227, 945 A.2d 368, 375; *accord Horne v. Elec. Eel Mfg. Co.*, 987 F.3d 704, 718 (7th Cir. 2021) ("[E]xculpatory clauses are not favored in Illinois, and are to be strictly construed against the party they benefit, especially when that party was also the drafter, as is the case here.") (citing *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 493 N.E.2d 1022, 1029 (Ill. 1986)). If the exculpatory language does not "provide explicitly that claims based in negligence are included in the release[,]" it must at least "convey a similar intent." *Thompson*, 2008 VT 15, ¶ 17, 183 Vt. at 227, 945 A.2d at 375 (internal quotation marks and citations omitted); *see also Horne*, 987 F.3d at 718 ("Such clauses must spell out the intention of the parties with great particularity and will not be construed to defeat a claim which is not explicitly covered by their terms.") (internal quotation marks omitted) (quoting *Scott & Fetzer Co.*, 493 N.E.2d at 1029-30).

The exculpatory clause at issue here does not specifically identify negligence claims. Its reference to punitive damages is ambiguous because punitive damages are available under both Vermont and Illinois law for breach of contract in certain circumstances. *See, e.g.*, *Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 53, 179 Vt. 167, 187, 893 A.2d 298, 315-16 ("Punitive damages are generally not available in breach of contract actions. We recognize an exception to this general rule for cases in which the breach has the character of a wilful and wanton or fraudulent tort, and when the evidence indicates that the breaching party acted with actual malice."); *Morrow v. L.A. Goldschmidt Assocs., Inc.*, 492 N.E.2d 181, 184 (Ill. 1986) (recognizing "[a]n exception to the general rule that punitive damages are not recoverable for breach of contract . . . . [P]unitive damages are recoverable where the breach amounts to an independent tort and there are proper allegations of malice, wantonness or oppression."). At best, the

exculpatory clause is ambiguous as to whether it applies to negligence claims and, at this stage, the court must "resolve any contractual ambiguities in [Plaintiff's] favor." *Int'l Audiotext Network, Inc.*, 62 F.3d at 72 (citing *Doe v. City of New York*, 15 F.3d 264, 266 (2d Cir. 1994)).

For the reasons stated above, Defendant's motion to dismiss Counts I and IV as barred by the exculpatory clause is DENIED.

### 3. Whether the Exculpatory Clause Is Void as a Matter of Public Policy.

Because Defendant's motion to dismiss Counts I, IV, and VII must be denied on other grounds, the court declines to address whether the exculpatory clause is void as a matter of public policy. *See Scott v. State*, 2021 VT 39, ¶ 26, 256 A.3d 105, 114 ("[T]he power to declare a contract void because it violates public policy is a very delicate and undefined power, and . . . should be exercised only in cases free from doubt.") (internal quotation marks and citation omitted); *Country Preferred Ins. Co.*, 979 N.E.2d at 43 ("[T]he power to declare a private contract invalid on public policy grounds is exercised sparingly.") (citations omitted).

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Doc. 11) is DENIED. SO ORDERED.

Dated at Burlington, in the District of Vermont, this 17 day of October, 2022.

Christina Reiss, District Judge
United States District Court