U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 MAR 28  AM 9: 33

CLERK

BY _____
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

MICHAEL S. PIECIAK, in his official
capacity as COMMISSIONER OF THE
VERMONT DEPARTMENT OF
FINANCIAL REGULATION, solely as
LIQUIDATOR of GLOBAL HAWK
INSURANCE COMPANY RISK
RETENTION GROUP,

        Plaintiff,

v.

CROWE LLP,

        Defendant / Third-Party
        Plaintiff,

v.

JASBIR S. THANDI,
GLOBAL CENTURY INSURANCE
BROKERS, INC., JASPREET SINGH
PADDA and QUANTBRIDGE CAPITAL
LLC,

        Third-Party Defendants.

Case No. 2:21-cv-00273-cr

Hon. Christina Reiss

## CROWE LLP'S AMENDED THIRD-PARTY COMPLAINT

Now comes Defendant and Third-Party Plaintiff Crowe LLP ("Crowe"), by and through

its undersigned attorneys, and for its Amended Third-Party Complaint against Jasbir S. Thandi,

Global Century Insurance Brokers, Inc., Jaspreet Singh Padda, and Quantbridge Capital LLC

(together, the "Third-Party Defendants"), respectfully states as follows:

gravel &
  shea
76 St. Paul Street
Post Office Box 369

## INTRODUCTION

1.      This is a contingent third-party claim by Defendant and Third-Party Plaintiff Crowe LLP in the event Crowe is held liable to the Plaintiff for any of the claims asserted in the Plaintiff's Complaint.

2.      Crowe was not negligent and did not breach any duties it owed to Global Hawk Insurance Company Risk Retention Group ("Global Hawk"), but to the extent Crowe is held liable to the Plaintiff, it is because the Third-Party Defendants made material misstatements of fact to Crowe about Global Hawk's assets and fiscal condition.

## PARTIES

3.      Global Hawk is a nonstock mutual insurance company organized and existing under the laws of the State of Vermont.

4.      Crowe LLP, formerly known as Crowe Horwath LLP ("Crowe"), is an Indiana limited liability partnership with its headquarters in Oak Brook Terrace, Illinois.

5.      Third-Party Defendant Jasbir S. Thandi ("Thandi") is presently a resident of Florida and was previously a resident of California. Starting in at least 2014, Thandi was the President and Treasurer of Global Hawk, as well as a director of Global Hawk.

6.      Third-Party Defendant Global Century Insurance Brokers, Inc. ("GCIB") was a corporation organized and existing under the laws of California. Beginning in 2005, GCIB managed the business of Global Hawk.

7.      Third-Party Defendant Quantbridge Capital LLC ("Quantbridge") was a limited liability corporation organized and existing under the laws of the State of New York.

8.      Third-Party Defendant Jaspreet Singh Padda ("Padda") is presently a resident of California. Padda previously resided in New York.



gravel &
   shea
76 St. Paul Street
Post Office Box 369

## JURISDICTION AND VENUE

9.      This Court has jurisdiction under 28 U.S.C. § 1367(a). This Court has original jurisdiction over the claims giving rise to this Amended Third-Party Complaint under 28 U.S.C. § 1332.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Vermont.

## FACTUAL BACKGROUND

11.     Global Hawk engaged Crowe to audit Global Hawk's financial statements for the year ending December 31, 2016, by an engagement letter dated August 23, 2016. As part of its 2016 audit, Crowe was provided with information concerning Global Hawk's assets and fiscal condition.

12.     Global Hawk engaged Crowe to audit Global Hawk's financial statements for the year ending December 31, 2017, by an engagement letter dated January 18, 2018. As part of its 2017 audit, Crowe was provided with information concerning Global Hawk's assets and fiscal condition.

13.     Global Hawk engaged Crowe to audit Global Hawk's financial statements for the year ending December 31, 2018, by an engagement letter dated December 12, 2018. As part of its 2018 audit, Crowe was provided with information concerning Global Hawk's assets and fiscal condition.

14.     If and to the extent Crowe is held liable to the Plaintiff in connection with any of the claims asserted in the Complaint, the following will have been proven true:

> a. Padda is and has been, since at least 2016, the managing member and chief compliance officer of Quantbridge, as well as its portfolio manager. Padda



gravel &
shea
ATTORNEYS AT LAW
76 St Paul Street
Post Office Box 369

- 3 -

controlled Quantbridge. Padda is Quantbridge's only employee (other than potential clerical staff).

b. Acting within the scope of his authority for Quantbridge, Padda deliberately and repeatedly lied to Crowe about assets owned by Global Hawk and fraudulently misrepresented to Crowe that Global Hawk owned assets it did not in fact own. Quantbridge and Padda made those misrepresentations to Crowe knowing and intending that Crowe would rely on those overstatements of Global Hawk's assets in auditing the financial statements of Global Hawk.

c. By way of example, on April 9, 2018, Jaspreet Padda sent a fax to Allison Cota of Crowe, the cover sheet of which stated: "As requested please find attached Global Hawk RRG statement for Dec 2017."

d. The April 9, 2018 fax enclosed a statement by Quantbridge Capital.

e. Padda prepared the Quantbridge statement attached to his April 9, 2018 fax to Allison Cota.

f. The Quantbridge statement attached to Padda's April 9, 2018 fax to Allison Cota purported to list assets owned by Global Hawk as of December 2017. That statement listed the values of assets purportedly owned by Global Hawk.

g. The Quantbridge statement attached to Padda's April 9, 2018 fax to Allison Cota, which Padda prepared, intentionally overstated Global Hawk's assets by millions of dollars. It stated that, as of December 31, 2017, Global Hawk owned \$28,009,782.22 in cash that was held in two Stifel accounts. That statement was knowingly and materially false.


gravel &
shea
˙˙˙˙˙˙˙˙˙˙˙˙˙˙˙˙˙
76 St. Paul Street
Post Office Box 369

- 4 -

h.  Quantbridge and Padda knew at the time of the April 9, 2018 fax to Allison Cota that the Quantbridge statement was materially false and overstated Global Hawk's assets by millions of dollars, and they intended for Crowe to rely on that overstatement of Global Hawk's assets in its audit work for Global Hawk. Crowe justifiably relied on Quantbridge and Padda's fraudulent misrepresentations to its detriment.

i.  By way of further example, on June 19, 2019, Jaspreet Padda sent a fax to Maeghan Hutchins of Crowe that enclosed a statement by Quantbridge Capital.

j.  Padda prepared the Quantbridge statement attached to his June 19, 2019 fax to Maeghan Hutchins.

k.  The Quantbridge statement attached to Padda's June 19, 2019 fax to Maeghan Hutchins purported to list assets owned by Global Hawk.

l.  The Quantbridge statement attached to Padda's June 19, 2019 fax to Maeghan Hutchins, which Padda prepared, intentionally overstated Global Hawk's assets by millions of dollars. It stated that, as of December 31, 2018, Global Hawk owned $44,920,066.15 in cash that was held in two Stifel accounts. That statement was knowingly and materially false.

m.  Quantbridge and Padda knew at the time of the June 19, 2019 fax to Maeghan Hutchins that the Quantbridge statement was materially false and overstated Global Hawk's assets by millions of dollars, and they intended for Crowe to rely on that overstatement of Global Hawk's assets in its audit work for Global Hawk. Crowe justifiably relied on Quantbridge and Padda's fraudulent misrepresentations to its detriment.


gravel &
shea
[illegible]
76 St. Paul Street
Post Office Box 369

- 5 -

n.  Thandi is the President and sole owner of GCIB. Acting within the scope of his authority for GCIB, Thandi deliberately and repeatedly supplied false representations to Global Hawk's Captive Manager—an entity named Global Insurance Management & Consulting LLC and managed by an individual named Stephen Brown—about assets owned by Global Hawk and about the value of Global Hawk's assets. GCIB and Thandi supplied those misrepresentations to the Captive Manager knowing and intending that the Captive Manager would in turn convey those misrepresentations to Crowe, who would rely on those overstatements of Global Hawk's assets in auditing the financial statements of Global Hawk. Thandi and GCIB's misrepresentations included the creation of bogus Global Hawk monthly bank statements that falsely reported deposits or omitted transfers and thus overstated Global Hawk's assets—which Thandi and GCIB gave to the Captive Manager knowing that he would convey those misrepresentations to Crowe, and that Crowe would rely on them in its audits of Global Hawk. By way of example:

i.  GCIB, through Thandi or at his direction, sent emails to the Captive Manager attaching a scanned copy of a $3,000,000 check signed by Thandi from Thandi's personal account at Wells Fargo Bank and a deposit receipt showing a $3,000,000 deposit in Mechanics Bank account ***8399 on May 26, 2017; a scanned copy of a $3,600,000 check signed by Thandi from Thandi's personal account and a deposit receipt showing a $3,600,000 deposit in account ***8399 on June 22, 2017; a scanned copy of a deposit receipt showing a $1,000,000 deposit

in account ***8399 on August 14, 2017; and a scanned copy of a deposit

receipt showing a $3,000,000 deposit in account ***8399 on November

30, 2017. The deposit receipts provided to the Captive Manager for

these capital contributions totaling $10,600,000 were false.

ii.   GCIB, through Thandi or at his direction, provided the Captive Manager

with monthly Mechanics Bank statements for account ***8399. The

statements provided to the Captive Manager for the relevant months in

2017 show (among other transactions) deposits of $3,000,000 on May

26, 2017, $3,600,000 on June 22, 2017, $1,000,000 on August 14, 2017,

and $3,000,000 on November 30, 2017. The statements provided to the

Captive Manager showing those deposits were false. The actual deposits

shown on genuine monthly statements obtained from Mechanics Bank

were $300 on May 26, 2017, $360 on June 22, 2017, $100 on August

14, 2017, and $300 on November 30, 2017. The statements provided to

the Captive Manager overstated the assets held in the account.

iii.  GCIB, through Thandi or at his direction, provided the Captive Manager

with purported deposit records and bank statements showing capital

contributions totaling $9,500,000 to Global Hawk in 2018 made by

deposits into Mechanics Bank account ***8399. Thandi signed

Addenda Nos. 11-15 to the Subordinated Surplus Note increasing the

amount of the Surplus Note to reflect these contributions. GCIB sent

emails to the Captive Manager attaching scanned copies of deposit

receipts purporting to show deposits of $2,000,000 on January 1, 2018,



gravel &
    shea
    ᴀ ᴘʀᴏꜰᴇꜱꜱɪᴏɴᴀʟ ᴄᴏʀᴘᴏʀᴀᴛɪᴏɴ
76 St Paul Street
Post Office Box 369

$2,500,000 on February 28, 2018, $2,500,000 on May 15, 2018, and $2,000,000 on June 1, 2018, and a photograph of a deposit receipt for a deposit of $500,000 on June 12, 2018. Of these asserted deposits, only the $500,000 deposit on June 12, 2018 was real. The deposit receipts for the other $9,000,000 in capital contributions were false.

    iv.  GCIB, through Thandi or at his direction, provided the Captive Manager with monthly Mechanics Bank statements for account ***8399. The statements provided to the Captive Manager for the relevant months in 2018 show (among other transactions) deposits of $2,000,000 on January 1, 2018, $2,500,000 on February 28, 2018, $2,500,000 on May 15, 2018, and $2,000,000 on June 1, 2018. The statements provided to the Captive Manager showing those deposits were false. The actual deposits shown on genuine monthly statements obtained from Mechanics Bank were $200 on January 3, 2018, $250 on February 28, 2018, $250 on May 15, 2018, and $200 on June 1, 2018. The statements provided to the Captive Manager overstated the assets held in the account.

o.  In addition, Thandi intentionally made numerous false statements directly to Crowe in the course of Crowe's audit work about the value of Global Hawk's assets and Global Hawk's financial condition, and also about the accuracy of other information that he and others had supplied to Crowe. Thandi made those knowingly false representations to Crowe with the intent that Crowe would rely on them in its audit work for Global Hawk.



gravel &
shea       
ᴬ ᴾᴿᴼᶠᴱˢˢᴵᴼᴺᴬᴸ ᶜᴼᴿᴾᴼᴿᴬᵀᴵᴼᴺ
76 St. Paul Street
Post Office Box 369

- 8 -

p.  By way of example, Thandi made such misrepresentations to Crowe in management representation letters relating to Crowe's 2016, 2017 and 2018 audits of Global Hawk's financial statements. Thandi intentionally made those misrepresentations to Crowe knowing them to be false, and with the intent that Crowe would rely on those misrepresentations in the course of its work on the 2016, 2017 and 2018 audits of Global Hawk's financial statements.

q.  More specifically, in a management representation letter addressed to Crowe dated June 30, 2017 and co-signed by Sandeep Sahota and Stephen Brown, Thandi acknowledged that he was making representations to Crowe relating to its 2016 audit of Global Hawk's financial statements, and that his representations concerned "matters that are material." Those representations— all of which were materially false and which Thandi knew to be false when he made them to Crowe—included that, to the best of Thandi's knowledge and belief:

   i.  "All transactions have been recorded in the accounting records and reflected in the financial statements."

   ii.  "We have provided you . . . [a]ccess to all financial records, documentation and other information that is relevant to the preparation and fair presentation of the financial statements."

   iii.  "Except as disclosed in the financial statements, or directly to you, there are or have been no material . . . [l]iens, encumbrances or other title impairments, such as pledges as collateral, on



gravel &
shea

76 St Paul Street
Post Office Box 369

-9-

Company assets at the balance sheet date" or "[u]nrecorded transactions."

iv.    "We have no knowledge of any fraud or suspected fraud affecting the Company involving . . . [m]anagement, whether material or not."

v.    "During the course of your audit, we have provided to you physical or electronic copies of various original documents. We understand that you are relying on such copies as audit evidence in your audit and represent that copies provided are an accurate and completed representation of the original documentation and that the copies have not been modified from their original version."

vi.    "As of December 31, 2016, the Company has obtained approval from the Department to contribute $13,100,000 in an additional surplus note, $3,500,000 of which was issued and cash received during 2016. The remaining surplus note amounts were issued in 2017 and the remaining cash was received subsequent to year-end and are included in capital contribution receivable on the balance sheet as of December 31, 2016."

r.    Similarly, in a management representation letter addressed to Crowe dated June 29, 2018 and co-signed by Sandeep Sahota and Stephen Brown, Thandi acknowledged that he was making representations to Crowe relating to its 2017 audit of Global Hawk's financial statements, and that his representations

concerned "matters that are material." Those representations—all of which were materially false and which Thandi knew to be false when he made them to Crowe—included that, to the best of Thandi's knowledge and belief:

      i.     "All transactions have been recorded in the accounting records and reflected in the financial statements."

      ii.     "We have provided you . . . [a]ccess to all financial records, documentation and other information that is relevant to the preparation and fair presentation of the financial statements."

      iii.     "Except as disclosed in the financial statements, or directly to you, there are or have been no material . . . [l]iens, encumbrances or other title impairments, such as pledges as collateral, on Company assets at the balance sheet date" or "[u]nrecorded transactions."

      iv.     "Except as disclosed to you, we have no knowledge of any fraud or suspected fraud affecting the Company involving . . . [m]anagement, whether material or not."

      v.     "During the course of your audit, we have provided to you physical or electronic copies of various original documents. We understand that you are relying on such copies as audit evidence in your audit and represent that copies provided are an accurate and completed representation of the original documentation and that the copies have not been modified from their original version."



gravel &
shea

76 St. Paul Street
Post Office Box 369

- 11 -

vi.    "As of December 31, 2017, the Company has obtained approval
       from the Department to contribute $8,500,000 in an additional
       surplus note, $4,000,000 of which was issued and cash received
       during 2017. The remaining surplus note amounts were issued
       in 2017 and the remaining cash was received subsequent to year-
       end and are included in capital contribution receivable on the
       balance sheet as of December 31, 2017."

s.   Similarly, in a management representation letter addressed to Crowe dated June
     28, 2019 and co-signed by Sandeep Sahota, Thandi acknowledged that he was
     making representations to Crowe relating to its 2018 audit of Global Hawk's
     financial statements, and that his representations concerned "matters that are
     material." Those representations—all of which were materially false and which
     Thandi knew to be false when he made them to Crowe—included that, to the
     best of Thandi's knowledge and belief:

            i.    "All transactions have been recorded in the accounting records
                  and reflected in the financial statements."

            ii.   "We have provided you . . . [a]ccess to all financial records,
                  documentation and other information that is relevant to the
                  preparation and fair presentation of the financial statements."

            iii.  "Except as disclosed in the financial statements, or directly to
                  you, there are or have been no material . . . [l]iens, encumbrances
                  or other title impairments, such as pledges as collateral, on



gravel &
shea

76 St. Paul Street
Post Office Box 369

- 12 -

Company assets at the balance sheet date" or "[u]nrecorded transactions."

iv. "Except as disclosed to you, we have no knowledge of any fraud or suspected fraud affecting the Company involving . . . [m]anagement, whether material or not."

v. "During the course of your audit, we have provided to you physical or electronic copies of various original documents. We understand that you are relying on such copies as audit evidence in your audit and represent that copies provided are an accurate and completed representation of the original documentation and that the copies have not been modified from their original version."

vi. "As of December 31, 2017, $4,500,000 was recorded as a capital contribution receivable on the balance sheet, which was received during 2018."

## COUNT I

### Fraud Against Thandi, Padda, GCIB and Quantbridge

15. Crowe incorporates by reference the allegations in all the paragraphs above.

16. If and to the extent Crowe is held liable to the Plaintiff in connection with any of the claims asserted in the Complaint, it is because:

a. Third-Party Defendants Thandi, Padda, GCIB and Quantbridge intentionally and materially misrepresented Global Hawk's assets and liabilities to Crowe in



gravel &
shea . . . . . .
. . . . . . . . . . . . . . . .
76 St. Paul Street
Post Office Box 369

connection with Crowe's 2016, 2017 and 2018 audits of Global Hawk's
financial statements;

b. Third-Party Defendants Thandi, Padda, GCIB and Quantbridge knew at the
   time that their statements to Crowe were false, and they intended for Crowe to
   rely on those overstatements of Global Hawk's assets and understatements of
   Global Hawk's liabilities in Crowe's audit work for Global Hawk;

c. Crowe was not aware of the statements' falsity at the time, nor was the falsity
   of those statements open to Crowe's knowledge;

d. Crowe justifiably relied on those statements to its detriment; and

e. Crowe has been damaged by the Third-Party Defendants' fraudulent
   misrepresentations.

WHEREFORE, if and to the extent Crowe is held liable to the Plaintiff in connection with
any of the claims asserted in the Complaint, Crowe respectfully requests that this Court:

A.    enter judgment in favor of Crowe and against the Third-Party Defendants in the
      amount of damages proven;

B.    award Crowe punitive damages;

C.    award Crowe its costs, attorneys' fees, and pre- and post-judgment interest; and

D.    grant such other and further relief as may be appropriate under applicable law.

Dated:        March 28, 2023

Matthew B. Byrne, Esq.
Gravel & Shea PC
76 St. Paul Street, 7th Floor, P.O. Box 369
Burlington, VT 05402-0369
(802) 658-0220
mbyrne@gravelshea.com

gravel &
shea
76 St. Paul Street
Post Office Box 369

- 14 -

Caesar A. Tabet, Esq.
John M. Fitzgerald, Esq.
Jonathan S. Kim, Esq.
Elizabeth B. Coburn, Esq.
Tabet Divito & Rothstein LLC
209 South LaSalle Street, 7th Floor
Chicago, Illinois 60604
Telephone: (312) 762-9450
ctabet@tdrlaw.com
jfitzgerald@tdrlaw.com
jkim@tdrlaw.com
ecoburn@tdrlaw.com

Attorneys For Defendant/Third Party Plaintiff