UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

KEVIN J. GAFFNEY, in his official )
Capacity as Commissioner of the Vermont )
Department of Financial Regulation, solely as )
Liquidator of Global Hawk Insurance )
Company Risk Retention Group, )
)
      Plaintiff,[1] )
)
      v. )   Case No. 2:21-cv-00273
)
CROWE LLP, )
)
      Defendant. )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES**
(Doc. 45)

Plaintiff Kevin J. Gaffney (the "Commissioner") brings this action in his official capacity as Commissioner of the Vermont Department of Financial Regulation ("VDFR"), solely as Liquidator of Global Hawk Insurance Company Risk Retention Group ("Global Hawk"), a Vermont nonstock mutual insurance company, against Defendant Crowe LLP ("Crowe"), an accounting firm that audited Global Hawk's financial statements in 2016, 2017, and 2018.

Plaintiff asserts nine causes of action: negligence by Crowe in issuing its audit reports in 2016 (Count I), 2017 (Count II), and 2018 (Count III); negligent misrepresentation by Crowe to VDFR in its audit reports in 2016 (Count IV), 2017 (Count V), and 2018 (Count VI); and breach of contract by Crowe for, without due

---

[1] At the time the pleadings were filed, the Commissioner of the Vermont Department of Financial Regulation was Michael S. Pieciak. The case caption has been updated to reflect that Kevin J. Gaffney was confirmed as the Commissioner of the Vermont Department of Financial Regulation in July 2022.

professional care, issuing its audit reports in 2016 (Count VII), 2017 (Count VIII), and 2018 (Count IX).

On January 6, 2023, Plaintiff filed a motion to strike Crowe's First, Third, and Ninth Affirmative Defenses pursuant to Fed. R. Civ. P. 12(f) for legal insufficiency. (Doc. 45.) Crowe opposed the pending motion on February 6, 2023 (Doc. 52), and Plaintiff replied on February 17, 2023 (Doc. 57), at which time the court took the pending motion under advisement.

Plaintiff is represented by Derek T. Rocha, Esq., Eric A. Smith, Esq., and Jennifer Rood, Esq. Crowe is represented by Caesar A. Tabet, Esq., Elizabeth B. Coburn, Esq., Jacob B. Berger, Esq., John M. Fitzgerald, Esq., Matthew B. Byrne, Esq., Michael J. Grant, Esq., and Nicole R. Marcotte, Esq.

## I.    Allegations in the Complaint.

As VDFR's Commissioner, Plaintiff was appointed as Liquidator of Global Hawk by order of the Vermont Superior Court, Washington Unit on June 8, 2020 and "brings this action solely in his capacity as Liquidator of Global Hawk." (Doc. 1-1 at 6, ¶ 1.) Pursuant to the Order of Liquidation, the Commissioner is "authorized to prosecute any action on behalf of the creditors, members, policyholders or shareholders of Global Hawk against any officer of Global Hawk or any other person." *Id.* at 6, ¶ 2.

Global Hawk is a Vermont-domiciled insurance company and risk retention group subject to regulation by VDFR. A June 8, 2020 Order of the Vermont Superior Court, Washington Unit declared Global Hawk insolvent and placed it in liquidation. At the time, Jasbir Thandi was the sole officer of Global Hawk as well as a director. Global Hawk also had three independent directors.

Crowe is an Indiana limited liability partnership that provides accounting, consulting, and audit services to public and private entities. It is licensed as an accounting firm by the Vermont Office of Professional Regulation.

Global Hawk engaged Crowe, via three separate engagement letters, to audit Global Hawk's financial statements for the years ending December 31, 2016; December 31, 2017; and December 31, 2018. Crowe released its 2016 auditor's report and letter of

qualification on June 30, 2017; its 2017 auditor's report and letter of qualification on June 29, 2018; and its 2018 auditor's report and letter of qualification on June 28, 2019.

Each auditor's report stated in relevant part: "We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our qualified audit opinion." *Id.* at 8, ¶ 13 (internal quotation marks omitted). In each auditor's report, Crowe opined that the financial statements attached to the report "present fairly, in all material respects, the financial position of [Global Hawk] . . . in accordance with accounting principles generally accepted in the United States of America." *Id.* at 9, ¶¶ 15-18. Each letter of qualification[2] stated that Crowe understood that Global Hawk intended to file the audited financial statements with VDFR, who would "be relying on that information in monitoring and regulating the financial condition of [Global Hawk.]" *Id.* at 9, ¶ 19 (internal quotation marks omitted).

Plaintiff alleges that the audited financial statements for 2016, 2017, and 2018 "each materially misstated the financial position of Global Hawk by representing Global Hawk was solvent when in fact it was insolvent." *Id.* at 11, ¶ 23. Each audited financial statement allegedly also "falsely report[ed] capital contributions as received, when the contributions had not been made[,]" and "omitt[ed] loan liabilities and pledges of Global Hawk's assets." (Doc. 1-1 at 11, ¶ 23.) In addition, the 2017 and 2018 audited financial statements "overstat[ed] cash balances." *Id.*

In his Complaint, Plaintiff asserts Crowe "had a duty to conduct its audit and issue its auditor's reports with due professional care[,]" including (1) "a duty to identify and assess the risks of material misstatement, whether due to fraud or error, at the financial

---

[2] VDFR regulations require a company's audited annual report to include a "letter of qualification" furnished by the auditor which describes "[t]he general background and experience of the staff engaged in [the] audit" and states that the auditor is "independent with respect to the company"; "conforms to the standards of his/her profession"; "understands that the audited annual report and his/her opinions thereon will be filed in compliance with" VDFR regulations; "consents to the requirements of Section 6 of [the VDFR audit] regulation"; and "is [properly] licensed by an appropriate state licensing authority and that he/she is a member in good standing in the American Institute of Certified Public Accountants." Vt. Admin. Code 4-6-1:3(C)(a)-(e).

statement and relevant assertion levels[,]" (2) "a duty to obtain sufficient and appropriate audit evidence regarding the assessed risks of material misstatement by designing and implementing appropriate responses to those risks, including appropriate external confirmations[,]" (3) "a duty to select an appropriate confirming party and to ask appropriate questions" in its "external confirmation procedures," and (4) "a duty to evaluate confirmations received to assess their reliability and, where they were unreliable, to obtain additional confirmations." *Id.* at 14, ¶ 32.

In 2016, 2017, and 2018, Plaintiff contends Crowe "breached its obligation to audit [Global Hawk] and issue its audit opinions with due professional care" by, among other things, failing to confirm financial information used in its audits with appropriate external parties and failing to evaluate whether the external confirmation it received provided reliable audit evidence. *See* Doc. 1-1 at 14-24, ¶¶ 33-68. Plaintiff alleges that if Crowe had properly audited Global Hawk, Global Hawk would have ceased operations in 2017 because the material misstatements in Global Hawk's financial statements and its insolvency would have been discovered.

By submitting "materially misstated" audited financial statements to VDFR, Plaintiff contends Crowe enabled Global Hawk to "incur operating losses and suffer misappropriations" and "allow[ed] its insolvency to increase." *Id.* at 26, ¶ 77. "The deepened insolvency harmed Global Hawk[,]" and it "harmed Global Hawk's policyholders and other creditors, who will receive smaller distributions on their claims in the liquidation." *Id.*

## II. Procedural Background.

On October 26, 2021, Plaintiff filed his Complaint in Vermont Superior Court, Washington Unit. On November 22, 2021, Crowe removed the case to this court based on diversity jurisdiction. On October 17, 2022, the court issued an Opinion and Order denying Crowe's motion to dismiss the Complaint. On November 30, 2022, Crowe answered the Complaint. In addition to denying many of Plaintiff's allegations, Crowe asserted twelve Amended Affirmative Defenses. Plaintiff seeks to strike the following:

1. **First Affirmative Defense:** Plaintiff's claims are barred, in whole or in

4

part, because Plaintiff's purported damages were caused by the failure of the Vermont Department of Financial Regulation to exercise appropriate oversight over Global Hawk and to take all action necessary to prevent any such damages from being incurred.

. . .

3. **Third Affirmative Defense:** Plaintiff's claims are barred, in whole or in part, under the doctrine of *in pari delicto*, which precludes a plaintiff from recovering against others for a wrong in which the plaintiff participated or is deemed through imputation to have participated. Plaintiff, as a liquidator, steps into the shoes of Global Hawk, and is therefore barred from recovery due to Global Hawk's fraud and misconduct and that of its sole actor, Jasbir Thandi.

. . .

9. **Ninth Affirmative Defense:** Plaintiff's claims are barred, in whole or in part, due to Plaintiff's failure to take reasonable steps to mitigate the damages Plaintiff claims to have suffered.

(Doc. 33 at 31-32.) Plaintiff subsequently withdrew his request to strike the Ninth Affirmative Defense in a footnote in his reply brief, stating: "Crowe has clarified that its Ninth Affirmative Defense does not concern regulatory conduct but only the Liquidator. Opp'n at 15. In that case, the affirmative defense need not be stricken." (Doc. 57 at 7, n.2.)

### III. Conclusions of Law and Analysis.

#### A. Standard of Review.

Pursuant to Fed. R. Civ. P. 12(f), upon a motion made by either party the court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." To prevail on a motion to strike an affirmative defense, the moving party must satisfy three prongs set by the Second Circuit in *GEOMC Co., Ltd. v. Calmare Therapeutics*, 918 F.3d 92 (2d Cir. 2019). *See Blow v. Univ. of Vermont & State Agric. Coll.*, 2021 WL 5903355, at *3 (D. Vt. Oct. 22, 2021) ("Plaintiff [as the moving party] has the burden of demonstrating that [defendant's] affirmative defenses fall below the *GEOMC* standard.").

First, the moving party must show that the affirmative defense fails the plausibility standard established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See*

5

*GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) (concluding that "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense"). Applying the *Twombly* plausibility standard "is a 'context-specific' task" requiring the court to employ the "degree of rigor appropriate for testing the pleading of an affirmative defense" in light of the affirmative defense's nature and timing. *Id.* Where the pleader of an affirmative defense has limited time to respond to the complaint or the operative facts are not "readily available[,]" the circumstances may "warrant[] a relaxed application of the plausibility standard." *Id.*

Second, the moving party must show that "there is no question of law which might allow the defense to succeed[.]" *Id.* at 96 (internal quotation marks omitted). "There is no dispute that an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *Id.* at 98.

And third, the moving party must show that "the plaintiff would be prejudiced by inclusion of the defense." *Id.* at 96 (internal quotation marks omitted). Prejudice "normally depend[s] on when the defense is presented." *GEOMC Co.*, 918 F.3d at 98. When an affirmative defense is timely filed, "[a] factually sufficient and legally valid defense should always be allowed . . . even if it will prejudice the plaintiff by expanding the scope of the litigation." *Id.* "On the other hand, prejudice may be considered and, in some cases, may be determinative, where a defense is presented beyond the normal time limits of the Rules, especially at a late stage in the litigation, and challenged by a motion to dismiss or opposed by opposition to a Rule 15(a) motion." *Id.* at 99.

As "the courts should not tamper with the pleadings unless there is a strong reason for so doing[,]" *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976), "[m]otions to strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015); *see also MadGrip Holdings, LLC v. West Chester Holdings, Inc.*, 2017 WL 4335028, at *3 (D. Vt. Sept. 27, 2017) (holding motions to strike are "disfavored," which is "particularly so when . . . there has been no significant discovery") (alteration in

6

original) (citation omitted).

### B. Whether to Strike Crowe's First Affirmative Defense.

Crowe's First Affirmative Defense asserts that Plaintiff's damages were caused by the VDFR's failure to exercise appropriate oversight over Global Hawk and to take prompt remedial action. The parties differ in their interpretations of this affirmative defense as either asserting an intervening cause or lodging a claim of comparative negligence.

To the extent that the First Affirmative Defense asserts Plaintiff's pre-liquidation conduct was an intervening cause, it constitutes a denial of the Complaint's allegations rather than a true affirmative defense. The Second Circuit has explained that it is "no affirmative defense to assert that an intervening cause broke the chain of causation, because the intervening cause challenge[s] 'an integral part' of the causation element of [a] claim." *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F.4th 50, 63 (2d Cir. 2021) (quoting *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 527 (2d Cir. 2004)). The court reached this conclusion, however, in deciding whether "the issue of intervening cause . . . was an affirmative defense that [the defendant] waived by failing to plead it." *Nat'l Mkt. Share Inc.*, 392 F.3d at 526. It does not follow that the First Affirmative Defense must be stricken as legally insufficient in the Rule 12(f) context, where waiver is not an issue. To the contrary, district courts have refused to strike affirmative defenses asserting intervening causes in actions against liquidators and receivers.[3]

---

[3] *See, e.g., Kochan v. Kowalski*, 478 F. Supp. 3d 440, 454 (W.D.N.Y. 2020) (recognizing affirmative defenses asserting intervening causes existed were "essentially denials of liability" but declining to strike them because "their inclusion causes no prejudice to Plaintiff"); *F.D.I.C. v. Hanson*, 2013 WL 12074983, at *2 (W.D. Wash. Dec. 10, 2013) ("[E]ven assuming they were pleaded as affirmative defenses, Defendants should not be penalized for exercising caution in pleading superseding intervening causes as affirmative defenses in an effort to put Plaintiff on notice of the issues that may arise as this litigation proceeds.") (alterations adopted) (internal quotation marks omitted); *Clark v. Milam*, 152 F.R.D. 66, 72 (S.D.W. Va. 1993) (denying motion to strike intervening cause affirmative defense because "regardless of whether Plaintiff owed Defendants a duty, Plaintiff's acts [as a regulator] could still theoretically break the chain of causation and absolve Defendants of liability").

7

When a defendant pleads affirmative defenses that are actually denials of the plaintiff's claim, courts in the Second Circuit generally find the *GEOMC* standard inapplicable and refuse to strike them.[4] "Just as there is no reason or mechanism for a court to review a defendant's denials of factual allegations in an answer, there is similarly no more reason to call upon the resources of a court to strike defenses that essentially amount to denials of facts pled." *Rich v. Miller*, 2022 WL 7748176, at *4 (S.D.N.Y. Oct. 4, 2022). If the First Affirmative Defense asserts an intervening cause defense, it essentially constitutes a denial of liability which "need not have been pled as an affirmative defense in the first place" and the motion to strike should be denied. *Town & Country Linen Corp. v. Ingenious Designs LLC*, 2020 WL 3472597, at *11 (S.D.N.Y. June 25, 2020).

To the extent that the First Affirmative Defense asserts a regulatory comparative negligence defense[5] based on actions or omissions by Plaintiff in his regulatory capacity, it is a true affirmative defense properly subject to a motion to strike and the *GEOMC* three-prong standard applies. *See Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) ("An affirmative defense is defined as '[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all

---

[4] *See, e.g., Rich v. Miller*, 2022 WL 7748176, at *7 (S.D.N.Y. Oct. 4, 2022) (denying motion to strike an affirmative defense where it was "in effect a denial that plaintiff will be able to prove an element of his claim and thus amount[ed] to a denial of the allegations of the complaint"); *Town & Country Linen Corp. v. Ingenious Designs LLC*, 2020 WL 3472597, at *11 (S.D.N.Y. June 25, 2020) (denying motion to strike affirmative defense because it was "clearly a denial, and a denial is not required to be pled in conformance with *GEOMC*"); *Jablonski v. Special Couns., Inc.*, 2020 WL 1444933, at *5 (S.D.N.Y. Mar. 25, 2020) (treating affirmative denials which "appear to negate elements of Plaintiff's claims" as "specific denials" and denying motion to strike on that basis).

[5] "Under [Vermont's] comparative negligence statute, a plaintiff in a negligence action may recover damages if *his or her own causal negligence* is not greater than that of the defendant." *Barber v. LaFromboise*, 2006 VT 77, ¶ 7, 180 Vt. 150, 154, 908 A.2d 436, 440 (emphasis supplied) (citing 12 V.S.A. § 1036); *see also Rankins v. Sys. Sols. of Kentucky*, 2021 WL 5415148, at *1 (N.D. Ill. Nov. 19, 2021) ("[Illinois] does, however, recognize a theory of modified comparative negligence [as an affirmative defense]. Under this standard, the plaintiff cannot recover damages if he is more than 50% of the proximate cause of the damage.").

allegations in the complaint are true.") (quoting BLACK'S LAW DICTIONARY (7th ed. 1999)) (alteration in original). Plaintiff urges this court to consider legislative intent and look to the decisions of other state and federal courts in order to construe the Vermont Supervision, Rehabilitation and Liquidation of Insurance Companies Act, 8 V.S.A. §§ 7031-7100 ("VSRLIC"), and determine that Plaintiff, as liquidator, acts in an independent legal capacity. As such, he cannot be held liable in comparative negligence for VFDR's acts as a regulatory agency.

The Vermont Supreme Court has not yet squarely decided whether an entity may be liable as a liquidator or receiver for its conduct as a regulator. The "bedrock rule of statutory construction is to determine and give effect to the intent of the Legislature." *Delta Psi Fraternity v. City of Burlington*, 2008 VT 129, ¶ 7, 185 Vt. 129, 132, 969 A.2d 54, 56 (internal quotation marks omitted). Nothing in the VSRLIC supports a conclusion that acts or omissions of a regulator state a claim against that same entity in its capacity as a liquidator, nor has Vermont common law ever recognized such a claim. Generally, liquidators in Vermont "are officers of the state who are required to protect policyholders, other creditors, and the public interest in the administration of an estate in liquidation." *In re Ambassador Ins. Co., Inc.*, 2015 VT 4, ¶ 23, 198 Vt. 341, 351, 114 A.3d 492, 498. This purpose would be frustrated if a defendant could defend against an action brought by a court-appointed liquidator by pointing to alleged misconduct by the liquidator acting in its separate regulatory capacity and asserting that had the regulator been more vigilant, liquidation would not have occurred.

In determining legislative intent, courts often look to other states' interpretations of similar statutes. *See Hum. Rts. Comm'n v. Benevolent & Protective Ord. of Elks of U.S.*, 2003 VT 104, ¶ 13, 176 Vt. 125, 130, 839 A.2d 576, 581 ("Where there are similar statutes in other jurisdictions, we are also guided by the interpretations of those statutes."). Other state courts agree that no comparative or contributory negligence claim lies against a liquidator for its actions as a regulator.[6] Federal courts have reached the

---

[6] *See, e.g., Benjamin v. Ernst & Young, L.L.P.*, 855 N.E.2d 128, 134 (Ohio Ct. App. 2006) (affirming dismissal of counterclaims based on lower court's conclusion that "the superintendent

9

same conclusion when applying state law[7] and when rejecting affirmative defenses against the Federal Deposit Insurance Corporation based on its pre-receivership conduct.[8] In an analogous context, the Vermont Supreme Court has distinguished between a receiver's personal capacity and his official capacity in equity receivership cases. *See, e.g., Clifford v. W. Hartford Creamery Co.*, 153 A. 205, 210 (Vt. 1931) (observing that "[t]he ordinary receiver" "is not personally liable for acts done under and in conformity to the orders of the court, but only in his official capacity; and actions brought against him as receiver are actions against the receivership or the property in his hands").

---

as liquidator is not subject to counterclaims arising from acts or omissions of the superintendent in her capacity as regulator"); *Foster v. Monsour Med. Found.*, 667 A.2d 18, 20 (Pa. Commw. Ct. 1995) ("[T]he Statutory Liquidator's power to recover damages against the officers and directors and to recoup the assets of the liquidated insurer should not be encumbered by this Court's examination of the correctness of . . . the Insurance Commissioner's regulatory actions."); *Foster v. Rockwood Holding Co.*, 632 A.2d 335, 338 (Pa. Commw. Ct. 1993) (same); *Matter of Ideal Mut. Ins. Co.*, 532 N.Y.S.2d 371, 374 (N.Y. App. Div. 1988) (holding that the Superintendent acting as "plaintiff Liquidator" of [an insurance company] is "a separate and distinct legal entity from the Superintendent of Insurance as Regulator of the industry"); *Corcoran v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 532 N.Y.S.2d 376, 378 (N.Y. App. Div. 1988) (same).

[7] *See, e.g., Clark v. Allen*, 139 F.3d 888, at *5 (4th Cir. 1998) (unpublished table decision) ("In a suit brought by a receiver, actions taken in his capacity as regulator technically represent third-party conduct and, therefore, provide no support for defenses requiring proof of a plaintiff's conduct."); *Williams v. Cont'l Stock Transfer & Tr. Co.*, 1 F. Supp. 2d 836, 844 (N.D. Ill. 1998) ("If the allegedly negligent acts of the Commissioner were committed by her while exercising her regulatory function as a receiver, prior to liquidation, these acts cannot be charged against her. The Commissioner is only responsible for negligent conduct committed as the plaintiff, liquidator.") (internal citation omitted); *State of N.C. ex rel. Long v. Alexander & Alexander Servs., Inc.*, 711 F. Supp. 257, 263 (E.D.N.C. 1989) ("To the extent that these counterclaims seek to recover against the Commissioner and his deputy individually for actions taken beyond the scope of their statutory authority, they are impermissible because they are not asserted against 'opposing parties' within the meaning of [Fed. R. Civ. P.] 13[.]") (internal citation omitted).

[8] *See Fed. Deposit Ins. Corp. v. Bernstein*, 944 F.2d 101, 106 (2d Cir. 1991) (observing that "the FDIC is authorized by statute to function in two separate and distinct capacities" and that "the wrongful conduct attributed to the FDIC as corporation cannot be attributed to the FDIC as receiver"); *Fed. Deposit Ins. Corp. v. Ornstein*, 73 F. Supp. 2d 277, 281 (E.D.N.Y. 1999) (citing *Bernstein* as justification for striking affirmative defenses against the FDIC as receiver based on FDIC corporate conduct).

Although Crowe argues that this is a question of law that should await further briefing, it fails to cite a single case in which a liquidator was found comparatively or contributorily negligent for its acts and omissions as regulator. "Under the 'separate capacities doctrine,' the actions of an insurance commissioner, while in a regulatory capacity and prior to the order of liquidation, cannot be asserted as affirmative defenses in an action commenced by the commissioner in the capacity of the liquidator of an insurer." 44 C.J.S. Insurance § 252 (2023). Plaintiff acts in distinct legal capacities as a regulator and as a liquidator under Vermont law and brings this action solely in his capacity as a court-appointed liquidator. As a result, any alleged misconduct by Plaintiff in his regulatory capacity cannot be the basis of a comparative negligence defense against him in this action. If the First Affirmative Defense asserts a regulatory comparative negligence defense, it is legally insufficient and must be stricken. *See GEOMC Co.*, 918 F.3d at 98 (holding an affirmative defense that provides "a legally insufficient basis for precluding a plaintiff from prevailing on its claims" is improper); *Aparicio v. Compass Recovery Grp., LLC*, 2021 WL 3684566, at *2 (W.D.N.Y. Aug. 19, 2021) ("Inclusion of a defense that must fail as a matter of law prejudices the plaintiff because it will needlessly increase the duration and expense of litigation.").

For the foregoing reasons, the court DENIES Plaintiff's motion to strike Crowe's First Affirmative Defense to the extent that it asserts an intervening defense and GRANTS Plaintiff's motion to strike to the extent the First Affirmative Defense asserts a regulatory comparative negligence defense.

### C. Whether to Strike Crowe's Third Affirmative Defense.

Crowe's Third Affirmative Defense asserts that Plaintiff's claims are barred in whole or in part under the doctrine of *in pari delicto* because, as liquidator, he steps into the shoes of Global Hawk. Plaintiff argues that, as a matter of law, Global Hawk's bad acts cannot be imputed to him as a liquidator and do not bar his claims. Crowe counters that it would be inappropriate to resolve the issue of whether an *in pari delicto* defense is available in ruling on a motion to strike.

The court previously considered the availability of Crowe's *in pari delicto* defense

11

in its October 17, 2022 Opinion and Order denying Crowe's motion to dismiss. Although it predicted that the Vermont Supreme Court would agree with the Seventh Circuit that a liquidator or receiver's appointment "removes the wrongdoer from the scene" and thus the "sting" from the *in pari delicto* defense, the court held that "[b]ecause the *in pari delicto* defense is often fact-intensive and requires the weighing of the evidence, it cannot be resolved for purposes of the pending motion to dismiss other than to conclude that the doctrine may not be available in the facts and circumstances of this case." *Pieciak v. Crowe LLP*, 2022 WL 10010523, at *9-10 (D. Vt. Oct. 17, 2022) (internal quotation marks omitted) (quoting *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995)). That same ruling is warranted here.

"[I]t is well established that close or new questions of law should *not* be resolved on a motion to strike." *Kochan v. Kowalski*, 478 F. Supp. 3d 440, 453–54 (W.D.N.Y. 2020) (internal quotation marks omitted) (emphasis in original). "Without this requirement, 'courts would run the risk of offering an advisory opinion on an abstract and hypothetical set of facts.'" *Car-Freshner Corp. v. Just Funky LLC*, 2019 WL 6270991, at *2 (N.D.N.Y. Nov. 25, 2019) (internal quotation marks omitted) (quoting *Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. New York*, 278 F. Supp. 2d 313, 325 (N.D.N.Y. 2003)). Absent further development of the factual record since the court's October 17, 2022 Opinion and Order, Plaintiff's motion to strike does not provide an appropriate vehicle to resolve the availability of the *in pari delicto* defense as a matter of law. Accordingly, the court DENIES Plaintiff's motion to strike the Third Affirmative Defense.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to strike Crowe's First and Third Affirmative Defenses (Doc. 45) is GRANTED IN PART and DENIED IN PART. SO ORDERED.

Dated at Burlington, in the District of Vermont, this 18th day of July, 2023.

Christina Reiss, District Judge
United States District Court