U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 APR 25 PM 12: 56

CLERK

BY /s/ /tw/
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

KEVIN J. GAFFNEY, in his official )
Capacity as Commissioner of the Vermont )
Department of Financial Regulation, solely as )
Liquidator of Global Hawk Insurance )
Company Risk Retention Group, )
)
Plaintiff, )
)
v. ) Case No. 2:21-cv-00273
)
CROWE LLP, )
)
Defendant/Third-Party Plaintiff, )
)
v. )
)
JASBIR S. THANDI, GLOBAL )
CENTURY INSURANCE BROKERS, INC., )
JASPREET SINGH PADDA, and )
QUANTBRIDGE CAPITAL LLC, )
)
Third-Party Defendants. )

**OPINION AND ORDER GRANTING MR. PADDA'S MOTION FOR
RECONSIDERATION, DENYING QUANTBRIDGE'S MOTION FOR
RECONSIDERATION, STAYING THE THIRD-PARTY ACTION
AS TO MR. PADDA, GRANTING CROWE'S MOTION TO COMPEL
AS TO QUANTBRIDGE, DENYING CROWE'S MOTION TO COMPEL
AS TO MR. PADDA, AND DENYING CROWE'S
REQUEST FOR ATTORNEY'S FEES AND COSTS**
(Docs. 166 & 188)

Third-Party Defendants Jaspreet Singh Padda ("Mr. Padda") and Quantbridge

Capital LLC ("Quantbridge") request reconsideration of the court's order denying their

motion to stay the civil action against Mr. Padda pending resolution of the related

criminal case. In the alternative, they request the court rule that no adverse inference will

result from Mr. Padda's invocation of his Fifth Amendment privilege. Defendant/Third-

Party Plaintiff Crowe LLP ("Crowe") opposes the motion and requests the court compel compliance with the discovery order, require immediate service of initial disclosures and responses, and award fees and costs under Fed. R. Civ. P. 37(a)(5)(A).[1]

Plaintiff is represented by Derek T. Rocha, Esq., Eric A. Smith, Esq., Jennifer Rood, Esq., and Margaret C. Fitzgerald, Esq. Crowe is represented by Caesar A. Tabet, Esq., Elizabeth B. Coburn, Esq., Jacob B. Berger, Esq., John M. Fitzgerald, Esq., Matthew B. Byrne, Esq., and Michael J. Grant, Esq. Jasbir S. Thandi ("Mr. Thandi") and Global Century Insurance Brokers, Inc., ("GCIB"), are self-represented. Mr. Padda and Quantbridge are represented by Hannah C. Waite, Esq.

## I. Factual and Procedural Background.

Plaintiff Kevin J. Gaffney (the "Commissioner") brings this action in his official capacity as Commissioner of the Vermont Department of Financial Regulation ("VDFR"), solely as Liquidator of Global Hawk Insurance Company Risk Retention Group ("Global Hawk"), a Vermont nonstock mutual insurance company, against Crowe, an accounting firm that audited Global Hawk's financial statements in 2016, 2017, and 2018. Plaintiff asserts nine causes of action: negligence by Crowe in issuing its audit reports in 2016 (Count I), 2017 (Count II), and 2018 (Count III); negligent misrepresentation by Crowe to VDFR in its audit reports in 2016 (Count IV), 2017 (Count V), and 2018 (Count VI); and breach of contract by Crowe for, without due professional care, issuing its audit reports in 2016 (Count VII), 2017 (Count VIII), and 2018 (Count IX) (the "Underlying Action").

On March 28, 2023, Crowe filed an Amended Third-Party Complaint (the "ATPC") asserting one count of fraud against Mr. Thandi, GCIB, Mr. Padda, and Quantbridge (the "Third-Party Action"). (Doc. 76.) The Third-Party Action "is a contingent third-party claim by Defendant and Third-Party Plaintiff [Crowe] in the event [it] is held liable to the [Commissioner] for any of the claims asserted in [his] Complaint." *Id.* at 2, ¶ 1. At times relevant to the ATPC, Quantbridge was a limited

---

[1] Mr. Padda and Quantbridge state Plaintiff Kevin J. Gaffney "represented to [them] that [he] takes no position on this motion." (Doc. 166 at 4.)

2

liability corporation organized and existing under the laws of New York. Since 2016, it was controlled by Mr. Padda as its managing member, chief compliance officer, portfolio manager, and only employee apart from "potential clerical staff[.]" *Id.* at 4, ¶ 14(a).

Mr. Padda and Quantbridge filed a motion to stay discovery in the Third-Party Action pending resolution of the Underlying Action on November 3, 2023. (Doc. 137.) Crowe opposed the motion on November 17, 2023, (Doc. 141), and on December 1, 2023, Mr. Padda and Quantbridge filed a reply. (Doc. 142.)

On November 16, 2023, Mr. Padda, Mr. Thandi, and non-party Sandeep Sahota ("Mr. Sahota") were indicted (the "Indictment") in the Northern District of California. *United States v. Thandi, et al.*, No. 4:23-cr-00428 (N.D. Cal. Nov. 16, 2023), ECF Doc. 1 (the "California Criminal Case").[2] They were each charged under 18 U.S.C. § 371 for conspiracy to commit insurance fraud (Count 1), 18 U.S.C. 1033(a) for insurance fraud false statements (Counts 2-3), and 18 U.S.C. § 2 for aiding and abetting. Mr. Thandi was also charged under 18 U.S.C. § 1033(b) for insurance fraud misappropriation (Counts 4-5) and 18 U.S.C. 1344 for bank fraud (Counts 6-7).

On December 18, 2023, the Indictment was unsealed. Mr. Padda and Quantbridge subsequently filed a motion to stay the Third-Party Action pending resolution of the California Criminal Case on January 8, 2024, (Doc. 157), which Crowe opposed on January 22, 2024. (Doc. 162.)

In seeking a stay, Mr. Padda and Quantbridge did not attach a copy of the Indictment, although they described the charges against them in three conclusory sentences. On January 29, 2024, the court held a hearing and issued an order denying both motions to stay, granting a motion for extension of time to complete the depositions of Mr. Padda and Mr. Sahota and ordering the parties to hold a Rule 26 conference by

---

[2] The court takes judicial notice of the Northern District of California docket in *United States v. Thandi, et al.*, No. 4:23-cr-00428 (N.D. Cal. Nov. 16, 2023). *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (explaining "docket sheets are public records of which [a] court [can] take judicial notice").

February 12, 2024, as well as file a stipulated discovery schedule (the "Discovery Schedule"). (Doc. 164.)

The parties filed the Discovery Schedule on February 9, 2024, (Doc. 165), which the court approved on February 12, 2024. (Doc. 168.)

Mr. Padda and Quantbridge filed a motion for reconsideration of the court's denial of their motion to stay the Third-Party Action due to Mr. Padda's criminal indictment on February 9, 2024. (Doc. 166.) Crowe opposed the motion on February 19, 2024, (Doc. 178), and on March 4, 2024, Mr. Padda and Quantbridge replied. (Doc. 185.)

In the interim, Mr. Padda filed a Motion for Protective Order on February 12, 2024, (Doc. 169), and an Emergency Motion for Protective Order on February 19, 2024, (Doc. 176), to reschedule his February 21, 2024 deposition. The court denied both motions on February 21, 2024, stating: "This is not an emergency. The parties shall meet and confer to set a mutually convenient deposition date if the court denies the pending Motion for Reconsideration." (Doc. 182) (citation omitted).

Thereafter, on March 11, 2024, Crowe filed a motion to compel Mr. Padda and Quantbridge to comply with the Discovery Schedule and requested the court award Crowe fees and costs pursuant to Fed. R. Civ. P. 37(a)(5)(A). (Doc. 188.) Mr. Padda responded in opposition on March 25, 2024.[3] (Doc. 192.) After Crowe replied on March 26, 2024, the court took the pending motions under advisement.[4] (Doc. 194.)

The Indictment contains the following factual allegations against Mr. Padda:

At a date unknown, but beginning no later than May 2018, defendants

---

[3] Although Crowe's motion to compel is directed at Mr. Padda and Quantbridge, only Mr. Padda responded in opposition to the motion. The court therefore considers the motion unopposed with regard to Quantbridge.

[4] The court will address Crowe's motion to compel non-party Sandeep Sahota's deposition and transferred request to quash in a separate Order. (Docs. 183, 195.) The court does not consider Mr. Sahota's "Notice of Joinder in Third-Party Defendants' Motion for Reconsideration[,]" (Doc. 171), because it is not a motion, let alone a motion to intervene. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *cf. MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 382 (2d Cir. 2006) (explaining that Fed. R. Civ. P. 24 "explicitly contemplates motions by non-parties[]" and "provides the mechanism by which non-parties who believe they have a valid and sufficient interest in a litigation can assert their rights").

4

> THANDI, SAHOTA, and PADDA, agreed to and did cause to be submitted false Global Hawk financial statements to the [VDFR] through its captive manager, Management Company 1. The purpose of these false submissions was to cover up Global Hawk's financial situation and to allow Global Hawk to continue to operate as a Vermont-domiciled insurance company. These financial statements significantly and materially overstated Global Hawk's assets and concealed the fact that Global Hawk was insolvent.
>
> In May 2020, after Vermont regulators discovered the misappropriation and Global Hawk's insolvency, Global Hawk was declared insolvent and was liquidated pursuant to a Court order of a Vermont state court. Overstating the value of the assets of Global Hawk, and the later discovery by the Vermont regulators and others, jeopardized the safety and soundness of Global Hawk as an insurer, and these false statements were a significant cause of Global Hawk being liquidated.

*United States v. Thandi, et al.*, No. 4:23-cr-00428 (N.D. Cal. Nov. 16, 2023), ECF Doc. 1 at 11, ¶¶ 16-17.

## II. Conclusions of Law and Analysis.

### A. Whether the Court Should Reconsider its Denial of a Stay of the Third-Party Action.

"It is well-settled that a party may move for reconsideration and obtain relief only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "[T]he standard for granting a . . . motion for reconsideration is strict[.]" *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (alteration adopted) (internal quotation marks omitted) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple[.]" *Id.* (internal quotation marks omitted) (citing *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

Quantbridge is a limited liability corporation, and "[c]orporations do not have a Fifth Amendment right against self-incrimination." *Louis Vuitton Malletier S.A. v. LY*

*USA, Inc.*, 676 F.3d 83, 92 n.5 (2d Cir. 2012). In the Second Circuit, "this rule includes small or solely owned corporations." *Id.* (citation omitted); *see also In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 158 (2d Cir. 2010) (explaining that "a one-person corporation cannot avail itself of the Fifth Amendment privilege" and "[t]here simply is no situation in which a corporation can" do so) (alteration in original) (internal quotation marks omitted). "If no existing employee [can] produce records without incriminating himself [or herself] by such an act, then the corporation may be required to produce the records by supplying an entirely new agent who has no previous connection with the corporation that might place him [or her] in a position where his [or her] testimonial act of production would be self-incriminating." *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 57 (2d Cir. 1985).

Because Quantbridge lacks a Fifth Amendment right against self-incrimination, even with Mr. Padda allegedly as one of its few employees, it lacks a factual and legal ground for requesting reconsideration. *See S.E.C. v. Ryan*, 747 F. Supp. 2d 355, 364 (N.D.N.Y. 2010) ("Whether it is a one-person corporation or a limited liability company, neither can avail itself of this Fifth Amendment protection.") (citing *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d at 158) (second citation omitted). In any event, it is not named in the Indictment in the California Criminal Case and has no criminal charges pending against it. The court thus DENIES Quantbridge's motion for reconsideration.

In contrast, Mr. Padda has a Fifth Amendment privilege against self-incrimination. *See* U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself[.]"). In seeking reconsideration, Mr. Padda provides the following new information: his counsel's affidavit in support of the motion explaining that she will advise him to invoke his Fifth Amendment rights if a stay is denied, (Doc. 166-1), and three examples from Crowe's 757 proposed written questions for his deposition:

- Did you alter or modify any information from Stifel's October 31, 2018 statement for Global Hawk's Stifel account when preparing Exhibit 27?

6

- How did you alter or modify any information from Stifel's October 31, 2018 statement for Global Hawk's Stifel account when preparing Exhibit 27?

- Why did you alter or modify any information[?]

(Doc. 166 at 7.)

He also provides an interrogatory Crowe served on him, which states:

> Describe in detail the reasons why Quantbridge's statements for Global Hawk's accounts at Stifel contain material misstatements as to Global Hawk's assets maintained in the Stifel accounts, including without limitation a description of who, if anyone, directed Quantbridge and/or Padda to materially misstate the cash, cash equivalents, holdings, securities, or other assets and/or liabilities maintained in or in connection with Global Hawk's Stifel accounts, and a detailed Identification of any Communications relating to any alleged material misstatements contained in Quantbridge's Global Hawk investment statements.

*Id.*

This new evidence renders it apparent that Mr. Padda's Fifth Amendment rights will be impaired if he is required to defend against the Third-Party Action at the same time as the Indictment. The court therefore GRANTS Mr. Padda's motion to reconsider and reconsiders its decision not to grant a stay.

### B.   Whether the Court Should Stay the Third-Party Action as to Mr. Padda.

"A district court may stay civil proceedings when related criminal proceedings are imminent or pending, and it will sometimes be prudential to do so." *Louis Vuitton*, 676 F.3d at 98. "[C]ourts have generally been concerned about the extent to which continuing the civil proceeding would unduly burden a defendant's exercise of his rights under the Fifth Amendment, which provides that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]'" *Id.* at 97 (second and third alterations in original) (footnote omitted) (citing U.S. Const. amend. V). In response to this concern, granting "[a] stay can protect a civil defendant from facing the difficult choice between being prejudiced in the civil litigation, if the defendant asserts his or her Fifth Amendment privilege, or from being prejudiced in the criminal litigation if he or she waives that privilege in the civil litigation." *Id.*

7

"The person seeking a stay bears the burden of establishing its need . . . [and a]bsent a showing of undue prejudice upon [the] defendant or interference with his [or her] constitutional rights, there is no reason why [the] plaintiff should be delayed in its efforts to diligently proceed to sustain its claim." *Id.* (citations and internal quotation marks omitted). Indeed, "a stay of a civil case to permit conclusion of a related criminal prosecution has been characterized as an extraordinary remedy[,]" *id.* at 98 (alterations adopted) (citation and internal quotation marks omitted), as "the Constitution rarely, if ever, requires [one]." *Id.* (emphasis omitted). A "court's decision ultimately requires and must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case." *Louis Vuitton*, 676 F.3d at 99 (citation and internal quotation marks omitted).

Second Circuit courts have used a six-factor balancing test when deciding whether to grant a stay:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Id.* Although this test may serve as "a rough guide[,]" it is not a "mechanical device[]" and should not "replac[e] the district court's studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Id.*

Mr. Padda argues that the court should stay the Third-Party Action because of its "relative infancy[]" and undisputed overlap with the California Criminal Case. (Doc. 166 at 3.) Asserting that the court need not also stay the Underlying Action, he states that "[e]ven if Crowe loses, the basis for the loss is likely to be that Crowe was not able to rely on anything that Mr. Padda . . . did[, which] . . . might short-circuit or narrow the issues in the Third-Party [Action]." *Id.* at 4. With regard to prejudice, he contends that he

8

has "little resources" and cannot testify in the Underlying Action without "revealing his defense strategy" or invoking his Fifth Amendment privilege. *Id.* at 5, 7. Mr. Padda contends he does not "pose any present risk of further violating the laws," and he asserts the public's interest lies in preserving a criminal defendant's constitutional rights and "in enforcement of the laws." *Id.* at 5-6.

Crowe counters that Mr. Padda fails to satisfy the reconsideration standard, contending that the Third-Party Action is not in an initial stage and a loss for Crowe in the Underlying Action would not necessarily narrow the issues in the Third-Party Action, in light of the court's previous "holding that negligence by a plaintiff does not defeat a fraud claim." (Doc. 178 at 5, ¶ 6.) It characterizes Mr. Padda's potential invocation of his Fifth Amendment rights and his claimed lack of resources as inadequate and unsupported reasons for a stay. In terms of prejudice, Crowe notes that a stay will cause duplicate issues at trial and potentially inconsistent findings regarding whether Mr. Padda provided truthful information to Crowe.

Both the Third-Party Action and the California Criminal Case concern Mr. Padda's alleged fraud in the State of Vermont based on the same events at issue in the Underlying Action. Accordingly, there is substantial, if not complete, overlap between the two actions. The first factor therefore weighs heavily in favor of a stay.

The second factor, the status of the Third-Party Action, does as well because the case is in an early stage, as "[n]either party has responded to discovery requests[.]" Doc. 185 at 1; *cf. Louis Vuitton*, 676 F.3d at 104 ("In light of the length of time that the lawsuit had progressed by the time the indictments issued, and defendants' dilatory tactics during discovery, granting a stay posed a particular risk to [the plaintiff's] interest in the prompt resolution of its claims."). In addition, Mr. Padda requested a stay soon after his indictment,[5] and "[t]here is considerable authority for the principle that a stay is most

---

[5] *Cf. Motorola, Inc. v. Abeckaser*, 2009 WL 816343, at *3 (E.D.N.Y. Mar. 26, 2009) (finding the status of the criminal case factor weighed against defendants when they had "waited for a year and a half following the issuance of the indictment to move for a stay of the parallel civil proceedings, choosing instead to make their stay motion after the close of discovery and on the eve of summary judgment").

9

justified where a movant, like the defendant[] here, is already under indictment for a serious criminal offense and is required at the same time to defend a civil action involving the same subject matter." *Id.* at 101 (footnote omitted).

With regard to the third and fourth factors concerning prejudice to the parties, although "[t]he [c]ourt appreciates that this stay will result in inconvenience and delay to [Crowe, however,] under settled authority the Fifth Amendment is the more important consideration." *Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 40 (S.D.N.Y. 1993).[6] "To now allow discovery under the relatively liberal rules of civil procedure, as opposed to the more restrictive rules and procedures governing criminal matters, poses a danger of fundamental unfairness to Mr. [Padda] . . . in the criminal case." *Jenkins v. Miller*, 2015 WL 13505321, at *2 (D. Vt. Apr. 6, 2015); *see Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009) ("A district court may also stay a civil proceeding in deference to a parallel criminal proceeding for other reasons, such as to prevent either party from taking advantage of broader civil discovery rights or to prevent the exposure of the criminal defense strategy to the prosecution.").

The Third-Party Action depends in part on the outcome of the Underlying Action. If Crowe is not found liable, the Third-Party Action will be moot. If Crowe is found liable, it may pursue its claim against the Third-Party Defendants. Resolution of the Underlying Action may therefore negate the need for unnecessary discovery relating to the Third-Party Action. Crowe's allegations in its ATPC made this contingent relationship clear.[7] Based on these considerations, the third and fourth factors weigh in

---

[6] *See Jenkins v. Miller*, 2015 WL 13505321, at *1 (D. Vt. Apr. 6, 2015) ("[A]lthough a stay will delay the instant case, Fifth Amendment concerns merit significant weight."); *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995) (explaining that the plaintiffs' "legitimate interest in the expeditious resolution of their case" is "trumped by defendants' interests in avoiding the quandary of choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case").

[7] In the ATPC, Crowe alleges its claim is contingent upon "[whether] and to the extent Crowe is held liable to the [Commissioner] in connection with any of the claims asserted in the [Underlying Action] Complaint[.]" (Doc. 76 at 3, 13-14, ¶¶ 14, 16.)

favor of Mr. Padda because the Underlying Action may proceed to a resolution without impairing Crowe's right to pursue the Third-Party Action.

Finally, the interests of the court and the public, the fifth and sixth factors, favor a stay or are in equipoise. "[C]ourts have an interest in seeing civil actions proceed even where a criminal investigation is ongoing[.]" *U.S. Commodity Futures Trading Comm'n v. A.S. Templeton Grp., Inc.*, 297 F. Supp. 2d 531, 535 (E.D.N.Y. 2003). On the other hand, deferring resolution of this case "makes efficient use of judicial time and resources by [e]nsuring that . . . subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination." *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003). Although the public has an interest in preventing fraud, "there is no indication that [Mr. Padda] pose[s] any present risk of violating the [relevant] laws, and 'the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant.'" *Sec. & Exch. Comm'n v. McGinnis*, 161 F. Supp. 3d 318, 324 (D. Vt. 2016) (citation omitted). On balance, "[b]ecause of the overlapping issues in the criminal and civil cases, the criminal prosecution will serve to advance the public interests at stake here." *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995).

Collectively, the competing factors considered weigh in favor of a stay. *See Sec. & Exch. Comm'n*, 161 F. Supp. 3d at 324 ("[A] stay is warranted because it would impose only a minimal 'hardship, inequity, or injustice' on [plaintiff] and would preserve [d]efendants' rights in any criminal action.") (citing *Louis Vuitton*, 676 F.3d at 99). The court therefore STAYS the Third-Party Action as to Mr. Padda and DENIES AS MOOT his request for adverse inference immunity.

### C. Whether the Court Should Grant Crowe's Motion to Compel Compliance with the Discovery Schedule and Request for Attorney's Fees and Costs.

Pursuant to Fed. R. Civ. P. 37(a)(1), "a party may move for an order compelling disclosure or discovery."[8] "A district court has broad latitude to determine the scope of

---

[8] The Federal Rules require that a motion for an order compelling discovery or disclosure

11

discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014).

In its motion, Crowe states that Mr. Padda's and Quantbridge's lack of initial disclosures and response to discovery requests justifies compelling them to comply with the Discovery Schedule.[9] The response, submitted only by Mr. Padda, claims that granting the motion to compel would be contrary to the court's Order denying the request to reschedule his deposition. *See* Doc. 182 ("The parties shall meet and confer to set a mutually convenient deposition date if the court denies the pending Motion for Reconsideration.") (citation omitted).

Crowe's motion to compel compliance with the Discovery Schedule is DENIED AS MOOT as to Mr. Padda because the court has stayed the Third-Party Action against him. The Third-Party Action is not stayed as to Quantbridge, Quantbridge did not oppose the motion to compel, and the court's Order regarding Mr. Padda's deposition did not apply to Quantbridge. Quantbridge must therefore comply with the Discovery Schedule. *See Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 54 (S.D.N.Y. 2018) ("Motions to compel, pursuant to Rule 37, are left to the sound discretion of the court."). Insofar as Crowe's motion to compel pertains to Quantbridge, the motion is GRANTED.

If the court grants in part and denies in part a Rule 37 motion, it "may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

---

"include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Crowe's motion includes March 6, 2024 emails between the parties regarding its objection to the lack of compliance, as well as a declaration stating that the parties performed a meet-and-confer call on March 11, 2024. *See* Docs. 188-1, 188-2. The court considers this information a sufficient certification that the parties conferred in good faith.

[9] Crowe claims that Mr. Padda and Quantbridge asserted that they would respond to discovery requests within two weeks of the court's motion to reconsider decision. Pursuant to their counsel's email, this assertion pertained only to Mr. Padda. *See* Doc. 188-2 at 2 ("Consistent with the [c]ourt's February 21, 2024 Entry Order, Mr. Padda will serve his discovery responses within [fourteen] days of a decision on the motion to reconsider (assuming it is denied).").

"This rule is in contrast with [Fed. R. Civ. P.] 37(a)(5)(A) and (B), which *require* the award of appropriate attorneys' fees to the prevailing party." *Alicea v. County of Cook*, 88 F.4th 1209, 1219 (7th Cir. 2023) (emphasis in original).

"Where the parties have taken legitimate positions, and the court grants in part and denies in part the motion, courts generally conclude that justice requires that each party be responsible for its own fees and costs." *New Mexico ex rel. Balderas v. Real Est. L. Ctr., P.C.*, 405 F. Supp. 3d 1233, 1254 (D.N.M. 2019). In this case, neither party briefed the issue of whether a corporation may assert a Fifth Amendment privilege. Although Quantbridge did not oppose the motion to compel, it filed a contemporaneous motion to reconsider the stay, which, if granted as to Quantbridge, would have mooted Crowe's motion to compel.

Based on these circumstances, the court DENIES Crowe's request for an award of attorney's fees and costs. In doing so, it warns Quantbridge that further non-compliance will likely result in the imposition of sanctions under Fed. R. Civ. P. 37 and that it is hereby compelled to file its initial disclosures and respond to Crowe's pending discovery requests within thirty (30) days or risk a default judgment. *See Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 450, 452 (2d Cir. 2013) (explaining that "[i]f a party . . . fails to obey an order to provide or permit discovery, the district court may impose sanctions, including rendering a default judgment against the disobedient party[,]" but "even entries of default judgments against counseled clients require sufficient notice") (internal quotation marks omitted) (second alteration in original) (citing Fed. R. Civ. P. 37(b)(2)(A)(vi)).

## CONCLUSION

For the foregoing reasons, the court GRANTS Mr. Padda's motion for reconsideration, DENIES Quantbridge's motion for reconsideration, and STAYS the Third-Party Action as to Mr. Padda. (Doc. 166.) The court GRANTS the motion to compel compliance with the Discovery Schedule as to Quantbridge, DENIES AS MOOT the motion with regard to Mr. Padda, and DENIES Crowe's request for attorney's fees and costs. (Doc. 188.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 25th day of April, 2024.

Christina Reiss, District Judge
United States District Court