UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 JUN 25  PM 3:22

CLERK

BY_____
DEPUTY CLERK

SANDY BIGGLESTONE, in her official ) 
capacity as COMMISSIONER OF THE )
VERMONT DEPARTMENT OF )
FINANCIAL REGULATION, solely as )
LIQUIDATOR of GLOBAL HAWK )
INSURANCE COMPANY RISK )
RETENTION GROUP, )
     Plaintiff, )
 )
v. )
 )
CROWE LLP, )
     Defendant. )

Case No.  2:21-cv-00273

## ORDER
(Doc. 187; Doc. 198)

Plaintiff Sandy Bigglestone[1] in her official capacity as Commissioner of the Vermont Department of Financial Regulation ("DFR") moves for partial summary judgment as to choice of law and Defendant Crowe LLP's ("Defendant" or "Crowe") sixth affirmative defense.  (Doc. 187 at 1–2.)  Defendant filed a cross-motion for partial summary judgment on its sixth affirmative defense and Counts I, IV, and VII of the complaint.  (Doc. 198 at 1.)

Plaintiff is represented by Derek T. Rocha, Esq., Eric A. Smith, Esq., Jennifer Rood, Esq., Margaret C. Fitzgerald, Esq., and Taylor P. Lovejoy, Esq.  Defendant is represented by Caesar A. Tabet, Esq., Elizabeth B. Coburn, Esq., Jacob B. Berger, Esq., John M. Fitzgerald, Esq., Matthew B. Byrne, Esq., and Michael J. Grant, Esq.

---

[1] Plaintiff is the third Commissioner of the Vermont Department of Financial Regulation to be a party to this case. The court has substituted each successor's name as required by Fed. R. Civ. P. 25(d).

**Background**

Global Hawk is a Vermont-domiciled insurance company and risk retention group ("RRG") subject to regulation by the DFR. (Doc. 197-5 ¶ 2.) The Vermont Superior Court, Washington Unit, declared Global Hawk insolvent by an Order of Liquidation on June 8, 2020. (Doc. 1-1 at 6–7, ¶ 3.) Pursuant to this Order, the Commissioner of the DFR was appointed as Liquidator of Global Hawk. (*Id.* at 5–6, ¶ 1.) The Order authorized the Commissioner "to prosecute any action on behalf of the creditors, members, policyholders or shareholders of Global Hawk against any officer of Global Hawk or any other person." (*Id.* at 6, ¶ 2.)

Crowe, an Indiana limited liability partnership with its headquarters in Illinois, is a public accounting, consulting, and technology firm that provides audit services to public and private entities. (*Id.* at 7, ¶ 4.) Crowe is licensed as an accounting firm by the Vermont Office of Professional Regulation and, at all relevant times, maintained an office in Burlington, Vermont. (*Id.*)

Global Hawk engaged Crowe to audit Global Hawk's financial statements for the years ending December 31, 2016; December 31, 2017; and December 31, 2018. (*Id.* at 7–8, ¶¶ 7–9.) Crowe released its 2016 auditor's report on June 30, 2017; its 2017 auditor's report on June 29, 2018; and its 2018 auditor's report on June 28, 2019. (*Id.* at 8, ¶¶ 10–12.) Letters of qualification from Crowe to Global Hawk's Board of Directors accompanied the reports, and each letter stated Crowe understood that Global Hawk intended to file the audited financial statements with the DFR, which "will be relying on that information in monitoring and regulating the financial condition of [Global Hawk]." (*Id.* at 9, ¶ 19.)

Plaintiff alleges the audited financial statements for 2016, 2017, and 2018 "each materially misstated the financial position of Global Hawk by representing Global Hawk was solvent when

in fact it was insolvent." (*Id.* at 11, ¶ 23.) Plaintiff also contends each audited financial statement materially misstated Global Hawk's assets and liabilities by "falsely reporting capital contributions as received, when the contributions had not been made" and by "omitting loan liabilities and pledges of Global Hawk's assets." (*Id.*)

Plaintiff asserts nine causes of action against Crowe. Relevant to these two motions are the three claims arising out of the 2016 audit report ("2016 claims"), including Count I (Negligence by Crowe), Count IV (Negligent Misrepresentation by Crowe to DFR), and Count VII (Breach of Contract by Crowe). (Doc. 6.) On March 8, 2024, the Liquidator filed a Motion for Partial Summary Judgment as to Choice of Law and Crowe's Sixth Affirmative Defense. (Doc. 187.) On April 8, 2024, Defendant opposed the motion. On that same day, Defendant also filed a Cross-Motion for Summary Judgment on its Sixth Affirmative Defense and Counts I, IV, and VII. (Doc. 198.) The Liquidator opposed the motion on April 22, 2024. (Doc. 205.) In these motions, the parties disagree as to whether the contract and tort claims arising out of the 2016 audit are time-barred by the express terms of their agreement.

## Standard of Review

The Court must grant a motion for summary judgment if the moving party demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if it "'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The standard of review for partial summary judgment is the same as for summary judgment. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."). A primary purpose "of the summary

3

judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). As it relates to these motions, there are no material disputed facts, and the sole issue raised is the determination of the law governing the Agreement between Global Hawk and Crowe and its impact on the time limit for filing the 2016 claims.

## Contractual Terms

On August 23, 2016, Global Hawk and Crowe entered into an agreement known as "The 2016 Engagement Letter." (Doc. 187-4.) Global Hawk engaged Crowe to complete the 2016 audit to meet "insurance company requirements for the State of Vermont . . . ." (*Id.* at 3.) The opening paragraph of the 2016 Engagement Letter concluded by stating, "The attached Crowe Engagement Terms is an integral part of this letter, and its terms are incorporated herein." (*Id.*) The Letter provided that "[t]his agreement must be construed, governed, and interpreted under the laws of the State of Illinois, without regard for choice of law principles." (*Id.* at 6.) The following provision was included in the Crowe Engagement Terms:

> TIME LIMIT ON CLAIMS – In no event will any action against Crowe, arising from or relating to this engagement letter or the Services provided by Crowe relating to this engagement, be brought after the earlier of 1) two (2) years after the date on which occurred the act or omission alleged to have been the cause of the injury alleged; or 2) the expiration of the applicable statute of limitations or repose.

(*Id.* at 10.) Crowe's Sixth Affirmative Defense states: "Plaintiff's claims relating to the 2016 audit are barred, in whole or in part, by the 'Time Limit on Claims' term in the 2016 Audit Engagement Agreement between Crowe and Global Hawk." (Doc. 33 at 32, ¶ 6.)

Plaintiff requests the court to "declare that Vermont law applies with respect to the Liquidator's tort claims and to the statute of limitations in the Liquidator's contract claims." (Doc. 187 at 2.) Defendant, however, requests that the court find the Time Limit provision in the 2016 Engagement Letter bars all claims stemming from the 2016 audit of Global Hawk and asks the

4

court to dismiss Counts I, IV, and VII as time-barred. (Doc. 198 at 12.) Plaintiff contends the Time Limit provision in the parties' agreement is null and void under Vermont law, citing 12 V.S.A. § 465, and, in any event, does not apply to Plaintiff's tort claims. (Doc. 187 at 2.)

## Conclusion of Law and Analysis

The determination of whether the 2016 claims are time-barred and whether summary judgment should be granted for or against Crowe's Sixth Affirmative Defense, depends on which state's law applies to the Time Limit provision in the 2016 Engagement Letter.

### I.    Choice of Law Analysis

Jurisdiction in this case rests on the diversity of the parties, and so the court looks to Vermont's choice-of-law rules to determine the law that applied to the claims and defenses at issue. *Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015) (citations omitted); *Evergreen Bank, N.A. v. Sullivan*, 980 F. Supp. 747, 750 (D. Vt. 1997). The Vermont Supreme Court "has adopted the Restatement (Second) of Conflicts for choice-of-law questions in both tort and contract cases." *McKinnon v. F.H. Morgan & Co.*, 750 A.2d 1026, 1028 (Vt. 2000) (first citing *Amiot v. Ames*, 693 A.2d 675, 677–78 (Vt. 1997) (tort cases); and then citing *Pioneer Credit Corp. v. Carden*, 245 A.2d 891, 894 (Vt. 1968) (contract cases)); *see also McGoff v. Acadia Ins. Co.*, 2011 VT 102, ¶ 9, 190 Vt. 612, 30 A.3d 680.

Under Vermont law, "[t]he threshold question in choice-of-law analysis is whether a conflict exists" between the laws of the jurisdictions at issue. *Rodrigue v. Illuzzi*, 2022 VT 9, ¶ 13, 216 Vt. 308, 278 A.3d 980 (citing *Havill v. Woodstock Soapstone Co.*, 783 A.2d 423, 427 (Vt. 2001)). Vermont courts "avoid choice-of-law questions where application of laws of both jurisdictions would produce [the] same result." *Id.* (citing *Havill*, 783 A.2d at 427). In the present case, Defendant—as the proponent of the non-Vermont law—bears "the burden of demonstrating

that [Illinois] law conflicts with Vermont law." *In re Ambassador Ins. Co.*, 2022 VT 11, ¶ 17, 216 Vt. 255, 275 A.3d 122 (citing *Gen. Acceptance Corp. v. Lyons*, 215 A.2d 513, 515 (Vt. 1965)). If such a conflict exists, Vermont courts apply "the analysis set forth in the Restatement (Second) of Conflict of Laws to resolve choice-of-law issues . . . ." *Id.* ¶ 15 (citing *McKinnon*, 750 A.2d at 1028).

The preliminary question to be answered is whether a conflict exists between Illinois and Vermont law. Under Illinois law, "[t]he parties to a contract may agree to a shortened contractual limitation period to replace a statute of limitations, so long as it is reasonable." *Country Preferred Ins. Co. v. Whitehead*, 979 N.E.2d 35, 43 (Ill. 2012) (citations omitted); *see also Fed. Ins. Co. v. Konstant Architecture Plan., Inc.*, 902 N.E.2d 1213, 1217 (2009) ("It is well established that parties to a contract may agree upon a shortened contractual limitations period to replace a statute of limitations, as long as is reasonable." (citation modified)). In comparison, Vermont law does not permit parties to shorten a statute of limitations through a contractual provision. 12 V.S.A. § 465 ("Except as otherwise provided by statute, any provision in a contract which limits the time in which an action may be brought under the contract or which waives the statute of limitations shall be null and void.").

Although this appears to present a clear conflict of law, the Liquidator argues there is no conflict between Vermont and Illinois law because the Time Limit provision in the 2016 Engagement Letter sets a strict two-year time limit for filing a claim, without consideration of when Plaintiff discovers the act or omission forming the basis for the claim, rendering the clause unenforceable under Illinois law. (Doc. 205 at 3–4.) In support of her position, the Liquidator cites the Illinois Public Accounting Act, 735 ILCS 5/13-214.2, which expressly incorporates the so-called discovery rule. 735 ILCS 5/13-214.2(a). It provides:

6

> (a) Actions based upon tort, contract or otherwise against any person, partnership or corporation registered pursuant to the Illinois Public Accounting Act, as amended, or any of its employees, partners, members, officers or shareholders, for an act or omission in the performance of professional services shall be commenced within 2 years from the time the person bringing an action knew or should reasonably have known of such act or omission.

*Id.* The 2016 Engagement Letter does not include the discovery rule, stating the contractual limitations period begins to run from "the date on which occurred the act or omission alleged to have been the cause of the injury alleged." (Doc. 187-4 at 10.)

Plaintiff contends the omission of the discovery rule and the omission of the notice provisions violate Illinois public policy. (Doc. 205 at 5–6.) As such, Plaintiff argues the contract term is unenforceable under Illinois law and, therefore, there is no conflict between Illinois and Vermont law. Defendant argues there are Illinois cases which have enforced contractual shortening of limitation provisions even when they begin to run upon the occurrence of an event and not the discovery of the injury. (Doc. 211-9 at 3.)

As described by the Illinois courts, "[t]he discovery rule delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627, 630–31 (Ill. 1994) (citations omitted). The purpose of the discovery rule is to "avoid mechanical application of a statute of limitations in situations where an individual would be barred from suit before he was aware that he was injured." *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1135 (Ill. 1995). "Courts have applied the discovery rule on a case-by-case basis, weighing the relative hardships of applying the rule to both plaintiffs and defendants." *Id.*

Despite the Liquidator's arguments, the Appellate Court of Illinois has held that, when there is no ambiguity in a contract's terms, the parties can intend to "eliminate the effect of the

discovery rule." *15th Place Condo. Ass'n v. S. Campus Dev. Team, LLC*, 14 N.E.3d 592, 599 (Ill. App. Ct. 2014). In *15th Place Condo.*, the plaintiff, who was the developer of two condominium towers, filed claims against an architectural firm and general contractor after numerous defects were discovered. In response to the defendant's motion to dismiss which asserted the claims were time-barred, the plaintiff argued the omission of the discovery rule in their contract violated public policy, citing cases construing automobile insurance policies. *Id.* There, the Illinois court found the public policy concerns in "uninsured/underinsured automobile policy claims and employee benefits claims" not to have "any bearing in this case where sophisticated parties contracted to and agreed to terms that trigger the running of all statutes of limitations on the date of substantial completion." *Id.*

Similarly, Plaintiff in the present case has cited uninsured motorist cases to illustrate "Illinois courts have held that notice provisions that could bar a claim before it accrues or before the policyholder is aware of it violate public policy." (Doc. 205 at 6 (first citing *Am. Serv. Ins. Co. v. Pasalka*, 842 N.E.2d 1219, 1225–28 (Ill. Ct. App. 2006); then citing *Moses v. Coronet Ins. Co.*, 549 N.E.2d 739, 742 (Ill. Ct. App. 1989); and then citing *Coronet Ins. Co. v. Ferrill*, 481 N.E.2d 43, 46–47 (Ill. Ct. App. 1985)). As with the Illinois Appellate Court in *15th Place Condo.*, the court is persuaded that the public policy implications in uninsured motorist cases differ from those in auditing contracts entered into by parties in equal bargaining positions.

Global Hawk and Defendant are sophisticated and competent parties. The parties entered into a contract which contained an unambiguous shortened limitations period and omitted the discovery rule. The court finds the omission of the discovery rule is not unreasonable under Illinois law and not violative of Illinois's public policy. As a result, the court concludes there is a conflict between Vermont and Illinois law.

Having found a conflict, the court must now conduct a choice-of-law analysis to determine which state's laws apply to Plaintiff's tort and contract claims. There must be a separate choice-of-law analysis for each claim. *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 169 (2d Cir. 2012) (citing *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 383 (2d Cir. 2006)). As a result, it is possible that the law of one jurisdiction applies to one issue and not the other.

### A. Breach of Contract Claim (Count VII)

Vermont, as the relevant forum, applies "the analysis set forth in the Restatement (Second) of Conflict of Laws" in contract disputes if a conflict between the two jurisdictions is identified. *In re Ambassador Ins. Co.*, 2022 VT 11, ¶ 15, 216 Vt. 255, 275 A.3d 122; *see also McKinnon*, 750 A.2d at 1028. Because Global Hawk and Crowe included a choice-of-law provision in their agreement, the court starts with Section 187 of the Restatement. This section, entitled "Law of the State Chosen by the Parties," provides:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

Restatement (Second) of Conflict of Laws § 187(1) (1971).

Crowe asserts Section 187(1) does not apply to this case, citing comment c, which states that "[t]he rule of this Subsection is a rule providing for incorporation by reference and is not a rule of choice of law." *Id.* § 187 cmt. c. The comment further states that:

> The parties, generally speaking, have power to determine the terms of their contractual engagements. They may spell out these terms in the contract. In the alternative, they may incorporate into the contract by reference extrinsic material which may, among other things, be the provisions of some foreign law . . . [M]ost rules of contract law are designed to fill gaps in a contract which the parties could themselves have filled with express provisions.

*Id.* The contractual provision in this agreement does not expressly incorporate Illinois law to fill a gap in the contract but instead indicates Illinois law will apply to interpret the contract as a whole. *See Hambrecht & Quist Venture Partners v. Am. Med. Internat., Inc.*, 46 Cal. Rptr. 2d 33, 40 n.12 (Cal. Ct. App. 1995).

Although the Vermont Supreme Court has adopted the Restatement (Second) Conflict of Laws to resolve choice-of-law questions, the court cannot find that the Vermont Supreme Court has specifically addressed § 187(1) and its applicability to a choice-of-law provision governing an entire contract. Instead, the Vermont Supreme Court has consistently applied the balancing test articulated in § 188. *See Pioneer Credit Corp.*, 245 A.2d at 894. For purposes of this analysis, the court will assume, without deciding, that § 187(1) applies and will look to whether the parties could have resolved the issue by an explicit contractual agreement.

"Whether the parties could have determined a particular issue by explicit agreement directed to that issue is a question to be determined by the local law of the state selected by application of the rule of § 188." Restatement (Second) of Conflict of Laws § 187 cmt. c. The rule of § 188 requires a balancing of the following factors: "(a) the place of the contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id.* § 188(2). "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* Some case law suggests the location of incorporation and principal place of business are significant contacts with a state. *See e.g.*, *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 822 F.3d 620, 642 (2d Cir. 2016). This District, however, has found that, although an insurance provider's principal place of business was in Illinois, Vermont had the most significant relationship to the contract because the policy at issue

10

insured a residence located in Vermont. *Knutsen v. State Farm Fire & Cas. Co.*, 375 F. Supp. 3d 514, 518–19 (D. Vt. 2019). "In evaluating the relative importance of these contact points of the contract, the place of making and the place of performance are entitled to substantial weight in the choice of the applicable law." *Pioneer Credit Corp.*, 245 A.2d at 894 (citing *Haag v. Barnes*, 175 N.E.2d 441, 444 (1961)).

Here, the balance of factors weighs heavily in Vermont's favor. Illinois's only contact with the contract and the parties is as Crowe's place of incorporation. In contrast, Vermont was the place of performance and the location of the subject matter of the contract. Additionally, the work governed by the contract was to be performed to satisfy requirements of Vermont law.

Having found Vermont has the most significant contact with the contract under § 188, the court must look to Vermont law to decide whether the parties could have resolved the Time Limit issues by an explicit provision in the contract, as contemplated by § 187. As stated earlier, Vermont law prohibits shortening limitation periods by contract. 12 V.S.A. § 465. Therefore, the parties could not have resolved the statute of limitations issue by a provision in the agreement, and the court must continue with the choice-of-law analysis under the Restatement. *See e.g., Kearney v. Okemo Ltd. Liab. Co.*, No 5:15-cv-00166, 2016 WL 4257459, at *4 (D. Vt. Aug. 11, 2016) (holding "whether . . . exculpatory clause[s] [are] valid or void under public policy, is not [something] which the parties could have resolved by an explicit provision in their agreement" as it "does not lie within their contractual capacity").

Where Section 187(1) of the Restatement does not apply, the next section provides that, even if the specific issue is one which could not have been resolved through an explicit provision in the contract, the law of the state chosen by the parties will be applied, except when:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

11

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2)(a)–(b) (1971). The Restatement notes that the rationale for this approach is in recognition that the "[p]rime objectives of contract law [which] are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract[,]" are often best served by allowing the parties to select the law that will govern their agreement. *Id.* cmt. e.

### 1.    Substantial Relationship or Reasonable Basis Exception

The primary question under the § 187(2)(a) analysis is whether Illinois has "no substantial relationship to the parties or the transaction" and there is no other reasonable basis for the parties' choice. *Id.* § 187(2)(a). Plaintiff argues Vermont law applies because Vermont has a greater substantial relationship to the parties and transaction since Global Hawk was both organized under Vermont law and had "its statutory office in Vermont." (Doc. 187 at 11, 14.) Defendant counters that Illinois's relationship with the parties and transaction is greater because Crowe is headquartered in Illinois. (Doc. 197 at 8.)

Plaintiff misstates the test. The Restatement does not ask the court to conduct a balancing test to determine which state has a greater substantial relationship, but rather to decide whether the chosen state has *no* substantial relationship to the parties or the transaction.

The Second Circuit has stated, when a business is incorporated in the chosen state, that state "has more than sufficient connection with the contract . . . ." *Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.*, 87 F.3d 604, 608 (2d Cir. 1996). Further, the Second Circuit guides us back to the Restatement (Second) of Conflict of Laws which states "the incorporation of one party

12

in the state whose law is chosen under the contract is sufficient to satisfy any applicable contacts requirement." *Id.* (citing Restatement (Second) of Conflict of Laws § 187 cmt. f). In *Valley Juice Ltd.*, the Second Circuit reasons that "Massachusetts courts have expressly relied" on the Restatement and the Restatement "makes clear that the incorporation of one party" in the chosen state satisfies the first part of the Section 187 test. *Id.*

Case law on whether a business's place of incorporation can solely be the basis to establish a substantial relationship varies. *Contrast ABF Cap. Corp., a Delaware Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005) ("A substantial relationship exists where one of the parties is domiciled or incorporated in the chosen state." (citing *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal.4th 459, 467, 834 P.2d 1148 (1992))); *with, DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 896 (8th Cir. 2006) (citing *Powell v. Am. Charter Fed. Sav. & Loan Ass'n*, 514 N.W.2d 326, 332 (1994)) (finding that a business's place of incorporation did not equate a substantial relationship with the contract when the contract was negotiated, entered into, and performed in a different state). The court, however, looks to the Restatement, as the Second Circuit did in *Valley Juice, Ltd.*, because Vermont follows the Restatement's approach in conflict-of-laws analyses. Under the Restatement, a business's place of incorporation is sufficient to satisfy the contact requirement.

Plaintiff has not shown that Illinois has no substantial relationship with the parties or the transaction. Crowe is headquartered in Illinois, which is sufficient to defeat the exception in Section 187(2)(a) of the Restatement.

### 2.    Materially Greater Interest and Public Policy Exception

Section 187(2)(b)'s two-part exception asks first whether Vermont has a materially greater interest than Illinois in the determination of the particular issue. If Vermont does have a materially greater interest than Illinois, the chosen state, the exception asks whether the application of Illinois

13

law would be contrary to the fundamental public policy in Vermont. Restatement (Second) of Conflict of Laws § 187(2)(b). Courts will refuse to apply the law of the chosen state only "to protect a fundamental policy of the state which, under the rule of § 188, would be the state of the otherwise applicable law, provided . . . that this state has a materially greater interest than the state of the chosen law in the determination of the particular issue." *Id.* § 187 cmt. g.

Plaintiff contends Vermont has a greater interest in the determination of the issue because this claim concerns the "performance of audits of Vermont domiciled insurers." (Doc. 187 at 21.) Further, Plaintiff claims Illinois's only interest is in "allowing a national business headquartered in that state to shield itself from suits permitted under other state's laws." (Doc. 205 at 14–15.) Defendant argues Illinois's interest is as Crowe's "home state." (Doc. 197 at 16.)

"Vermont has a general interest in having its laws apply to contracts governing transactions taking place within the state." *Kearney*, 2016 WL 4257459 at *4. Global Hawk was organized under Vermont law and had its statutory office in Vermont. (Doc. 187-2 at 2, ¶ 3.) Additionally, the audit was performed to comply with the regulatory requirements of the DFR, a Vermont regulatory agency. (*Id.* at 4–6, ¶¶ 7–19.) DFR relied on this audit report to assist in their monitoring and regulating of Global Hawk. (*Id.* at 6, ¶ 19.) Comparatively, the only connection Illinois has to this contract provision is the fact that Crowe is headquartered in Illinois. (Doc. 197 at 16.) Vermont appears to have a materially greater interest than Illinois in the determination of this issue, but, regardless of this conclusion, the court determines the contractually shortened limitations period provision does not violate a fundamental public policy of Vermont.

"[A] fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." Restatement (Second) of Conflict of Laws § 187 cmt. g. The Vermont

14

Supreme Court has held that a choice-of-law provision will be upheld unless the differences between the forum state and the chosen state are so "cruel or shocking to the average man's conception of justice" that the court will not enforce it on "public policy grounds." *Stamp Tech, Inc. ex rel. Blair v. Ludall/Thermal Acoustical, Inc.*, 2009 VT 91, ¶ 22, 186 Vt. 369, 987 A.2d 292 (2009) (citing *Payne v. Rozendaal*, 520 A.2d 586, 588–89 (Vt. 1986)). "Outside this narrow exception" of declining to enforce the chosen state's laws on public policy grounds, "Vermont courts 'apply the applicable provisions of the law of the designated state in order to effectuate the intentions of the parties.'" *Vinci v. V.F. Corp.*, No. 2:17-CV-00091, 2018 WL 339942 at *3 (D. Vt. 2018) (quoting *Stamp Tech.*, 2009 VT 91, ¶ 22, 189 Vt. 369, 987 A.2d 292). This District applied California law in a choice-of-law contract analysis when a plaintiff failed to identify "any reason why California contract law would be 'cruel or shocking to the average man's conception of justice.'" *Id.* (citing *Stamp Tech.*, 2009 VT 91, ¶ 22, 186 Vt. 369, 987 A.2d 292).

Plaintiff claims the application of Illinois law would be contrary to the fundamental public policy of Vermont because the Vermont Legislature's passage of 12 V.S.A § 465 signaled a public policy to preclude parties from contractually shortening the statute of limitations. (Doc. 187 at 20 (first citing 12 V.S.A. § 465; and then citing *Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 666–67 (D. Vt. 2012))). At the hearing, Plaintiff further asserted that the language of 12 V.S.A. § 465, which starts with "[e]xcept as otherwise provided by statute[,]" should be interpreted to mean these contractual provisions are "null and void" unless the legislature says otherwise. (Doc. 276 at 10:15–10:24.) Plaintiff also contends that, since this statute cannot be waived, it renders it a fundamental public policy. (*Id.* at 10:24–11:24.)

Defendant counters that the mere fact that the time limit provision is codified in a statute does not establish it as a fundamental policy. (Doc. 197 at 12.) In addition, Defendant argues that

"[e]xcept as otherwise provided by statute" means the provision is open to exceptions and there may be circumstances in which contractual time limitations on claims may be allowed. (Doc. 276 at 17:16–14:23.) According to Defendant, if the Vermont legislature intended there to be no circumstances in which an insurance company could contractually limit the statute of limitations, the statute governing actions by and against liquidators would not specifically reference an agreement to fix the time for pursuing a claim. (*Id.* at 18:1–18:17; *see also* 8 V.S.A. § 7063(b).) Instead, 8 V.S.A. § 7063 states:

> Where, by agreement, a period of limitation is fixed for instituting a suit or proceeding upon any claim . . . the liquidator may, for the benefit of the estate, take any such action . . . within a period of 180 days subsequent to the entry of an order for liquidation, or within such further period as is shown to the satisfaction of the court not to be unfairly prejudicial to the other party.

8 V.S.A. § 7063(b). Defendant argues 8 V.S.A. § 7063(b)'s language would be "superfluous because the liquidator does not need 180 days of tolling or any other amount of time of tolling if any contract like [the one in this case] is going to be void in all cases." (Doc. 276 at 18:25–19:3.)

Plaintiff relies on the Vermont Supreme Court's decision in *Marine Midland Bank v. Bicknell*, 2004 VT 25, 176 Vt. 389, 848 A.2d 1134 (2004), as Vermont's acknowledgement of the legislature's position on the timeliness of actions. (Doc. 205 at 16.) This case, however, does not hold the timeliness of actions brought in Vermont is a fundamental policy, but instead states, "deference to other states' policies through the importation of their procedural rules would compromise Vermont's own ability to control the timeliness of actions brought in its courts." *Marine Midland Bank*, 2005 VT 25, ¶ 10, 176 Vt. 389, 848 A.2d 1134. The Court continues that applying New York law which bars actions on judgments during a statutorily imposed waiting period would be detrimental to "Vermont's legislative policy to set a definite time in which a

creditor can enforce the payment of its debt by allowing the same amount of time by either actions on judgments or executions." *Id.* (citing 12 V.S.A. §§ 506, 2681).

As a statute, 12 V.S.A. § 465 is a Vermont policy by virtue of it being passed by the legislature. Plaintiff, however, has failed to bridge the gap between a Vermont policy and a fundamental public policy of Vermont. It cannot be true that every statutory provision constitutes a fundamental policy of the state. *See Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 252 (5th Cir. 1994) ("The law of a state and its public policy are not necessarily synonymous. Not every law enacted by the legislature embodies the 'public policy' of the state."); *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 607 (4th Cir. 2004) (noting "the proposition that not every statutory provision constitutes a fundamental policy of a state").

The court finds the Northern District of Alabama's decision in *Morse v. Life Ins. Co. of N. Am.*, 399 F. Supp. 3d 1236 (N.D. Ala. 2019) is particularly persuasive on this issue. In *Morse*, the court determined an insurance policy which contained a three-year limit on legal actions to recover benefits was not "'contrary to [a] fundamental public policy' of Alabama that would otherwise compel the application of Alabama law[,]" despite Alabama statutory law voiding shortened limitations periods. *Morse*, 399 F. Supp. 3d at 1241–42 (quoting *Stovall v. Universal Const. Co.*, 893 So. 2d 1090, 1102 (Ala. 2004). The court emphasized the "fundamental policy exception" is "intended to be narrow and applied only in rare circumstances," and that the court was unaware of any court holding the Alabama statute in question as a fundamental public policy. *Id.* at 1242 (citation modified).

Similarly, this court is not aware of any Vermont court that has determined 12 V.S.A. § 465 to constitute a fundamental public policy. Further, the court cannot interpret the statutory language,

17

"[e]xcept as otherwise provided by statute," to mean any contractual limitation is against Vermont's fundamental public policy.

As stated earlier, this is a business-to-business contract with no oppressive bargaining power imbalance. Vermont law values the freedom of contracting and respects the parties' intention when entering into a contract. *See Stamp Tech.*, 2009 VT 91, ¶¶ 22–23, 186 Vt. 369, 987 A.2d 292. While 12 V.S.A. § 465 voids time limit provisions, the court cannot find the difference between Illinois and Vermont law to be cruel or shocking to the average man's conception of justice. Vermont honors the rights of parties to form contractual relationships based on their agreed-upon terms, and Plaintiff has not shown Illinois law, which permits contractually shortened limitations periods, to violate Vermont's fundamental public policy.[2]

### B. Tort Claims (Counts I and IV)

As an initial matter, Plaintiff argues the 2016 tort claims are not subject to the Illinois choice-of-law provision in the Engagement Letter because there is no conflict with respect to tort law between Vermont and the tort law claims fall outside the scope of the agreement. (Doc. 187 at 10–11.) Defendant counters the choice-of-law provision should be read in conjunction with the time limit provision that is attached to the Engagement Letter and, therefore, the time limit provision bars the 2016 tort claims. (Doc 276 at 23:16–25:19.)

The 2016 Engagement Letter contains a choice-of-law provision that states, "[t]his agreement must be construed, governed, and interpreted under the laws of the State of Illinois,

---

[2] At the hearing on the motion, Plaintiff raised an alternative theory that the omission of the discovery rule is "cruel and unusual, and a reasonable man would see it as such, that a contract could deprive a party of a cause of action before it was aware of the cause of action." (Doc. 276 at 29:13–29:16.) Vermont statutory law does prohibit shortening time limitations, but as stated above, the court cannot say it does so without exception. In the absence of persuasive or binding authority holding that the omission of the discovery rule violates a fundamental public policy in Vermont, the court cannot find that this omission is such a violation.

without regard for choice of law principles." (Doc. 187-4 at 6.)  The Time Limit attached to the

Engagement Letter reads:

> In no event will any action against Crowe, arising from or relating to this
> engagement letter or the Services provided by Crowe relating to this engagement,
> be brought after the earlier of 1) two (2) years after the date on which occurred the
> act or the omission alleged to have been the cause of the injury alleged; or 2) the
> expiration of the applicable statute of limitations or repose.

(*Id.* at 10.)

The Eleventh Circuit, in *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337 (11th Cir.

2005), held a Purchase Agreement's time-limit provision was subject to the same Agreement's

choice-of-law provision. *Id.* at 1342–43. The court determined that the two-year limitations period

was part of the contract. *Id.* at 1343. "[T]he agreement to bring 'any action or proceeding' within

the two years [was] an obligation pursuant to the Purchase Agreement, making it subject to the

choice-of-law provision." *Id.*

The court has already decided the contract is to be interpreted under Illinois law. The Time

Limit attached to the Engagement Letter is at issue here, not the choice-of-law provision. The

Time Limit is a part of the contract and therefore shall be understood under Illinois law. The court

finds the language, "Services provided by Crowe relating to this engagement," broad enough to

incorporate the tort claims at issue.

In *Valley Juice Ltd.*, the Second Circuit held that the broad contractual language—"the

Agreement is to be governed by the laws of New York"—in a choice-of-law provision did not

govern tort claims. *Valley Juice Ltd.*, 87 F.3d at 611 (citation modified). The Second Circuit only

considered a choice-of-law provision because there was no addendum to the agreement which

included language which could incorporate potential tort claims. *Id.* at 606. The Second Circuit

would have applied Massachusetts, one of the forum states, choice-of-law principles to determine

19

the substantive law. *Id.* at 611. Contractual language more specific than that considered by the Second Circuit in *Valley Juice, Ltd.*, such as, "'govern, construe, and enforce the rights and duties of the parties arising from or relating in any way to the subject matter of this contract' would cover all claims, including tort claims, related to the contract." *See e.g., Maltz v. Union Carbide Chems. & Plastics Co.*, 992 F. Supp. 286, 297–98 (S.D.N.Y. 1998) (quoting *Caton v. Leach Corp.*, 896 F.2d 939 (5th Cir. 1990)).

The present case has a broadly worded Time Limit provision which, by its terms, includes potential tort claims. As decided earlier, this Time Limit provision of the contract must be interpreted and understood under Illinois law. Unlike *Valley Juice Ltd.*, this case concerns a separate provision in the agreement versus the choice-of-law provision. The court finds the Time Limit is permissible under Illinois law and, therefore, the 2016 claims, Count I and IV, are time-barred.

## ORDER

The court DENIES Plaintiff's Motion for Partial Summary Judgment with respect to Counts I, V, and VII. (Doc. 187.) The court GRANTS Defendant's Cross-Motion for Partial Summary Judgment with respect to Counts I, IV, and VII. (Doc. 198.)

SO ORDERED at Rutland, Vermont, this 25th day of June 2026.

_____
Mary Kay Lanthier
United States District Court Judge

20